IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-50702
_____

CENTRAL FREIGHT LINES INC.,

Plaintiff - Appellant,

versus

APA TRANSPORT CORP.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

March 5, 2003

Before JOLLY, HIGGINBOTHAM, and MAGILL,[*] Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

In this appeal, we are called upon to decide whether the district court erred in dismissing the lawsuit brought by plaintiff Central Freight Lines, Inc. for lack of personal jurisdiction over the defendant, APA Transport Corp. We conclude that the district court does have personal jurisdiction over the defendant. Accordingly, we reverse the judgment of the district court and remand for further proceedings.

_____

[*]    Circuit Judge of the Eighth Circuit, sitting by designation.

Plaintiff-Appellant Central Freight Lines, Inc. ("CFL") is a freight delivery company located in Waco, Texas that primarily ships freight in the southwestern United States. Defendant-Appellee APA Transport Corp. ("APA") is a freight delivery company located in North Bergen, New Jersey. APA primarily ships freight in the northeastern United States. In September 2000, the two companies entered into an "Interline Agreement" – a standing agreement reflecting the terms and conditions under which each carrier could use the services of the other in the other company's primary region of operation. In December 2000, CFL began shipping freight to APA's terminal in North Bergen, New Jersey for delivery by APA to customers in APA's primary area of operations in the northeastern United States.

In March 2001, CFL notified APA and its other partners-in-shipping across the United States that CFL anticipated receiving a two-year contract with Dell Computers to deliver Dell freight from the Western District of Texas to Dell customers across the United States. At this time, CFL requested that each of its partners determine if it could profitably handle Dell's shipments to its respective region of operation based on a "D-83" pricing methodology and the other terms and conditions provided by their respective interline agreements with CFL.[1] APA apparently agreed

---

[1] The precise details of the D-83 pricing methodology are not particularly relevant to the disposition of the issue of

to complete CFL's shipments of Dell merchandise in accord with their Interline Agreement.  In alleged reliance upon the pricing information provided by APA and CFL's other partners-in-shipping, CFL entered into a contract with Dell Computers in March 2001.  APA began receiving shipments of Dell merchandise at its terminal in New Jersey the following month.[2]

At some point shortly thereafter, business dealings between CFL and APA soured.  CFL alleges that APA breached their Interline Agreement by demanding prices for the delivery of Dell's freight of 194% of the negotiated and accepted rate.  CFL also alleges that APA wrongfully withheld delivery of Dell's freight until CFL indicated that it would pay APA and wrongfully refused to accept additional deliveries.  For its part, APA alleges that CFL failed to pay APA approximately $430,254 for APA's share of freight charges.  Both parties agree that CFL stopped shipping Dell freight to APA in early June 2001 and found an alternative carrier to ship freight to the northeastern United States.

CFL filed this action against APA on June 28, 2001, in the Western District of Texas, alleging breach of contract, breach of fiduciary duty, negligent misrepresentation, and tortious interference with CFL's contractual relationship with Dell.  On

personal jurisdiction.

[2]    Under the terms of the Interline Agreement, APA apparently could have "interlined" freight to CFL for delivery in Texas and the southwestern United States, but APA apparently never did so.  Only CFL interlined freight to APA.

3

August 7, 2001, APA filed a motion to dismiss CFL's complaint for lack of personal jurisdiction or for improper venue or, in the alternative, to transfer venue to the District of New Jersey.

APA then filed a separate action against CFL on July 20, 2001, in the District of New Jersey, apparently alleging breach of contract claims against CFL arising out of CFL's alleged failure to pay APA its share of freight revenues for shipments delivered by APA pursuant to the Interline Agreement. (APA's case is <u>A-P-A Transport Corp. v. Central Freight Lines, Inc.</u>, Cause No. 01-CV-3445 (D.N.J.).) Upon CFL's motion, the New Jersey district court stayed the proceedings in its court until such time as the Western District of Texas ruled on APA's motions to dismiss or transfer.

Following limited expedited discovery regarding jurisdiction and venue, on June 6, 2002, the Western District of Texas granted APA's motion to dismiss for lack of personal jurisdiction, finding that APA did not have sufficient contacts with the State of Texas to support the court's exercise of specific or general personal jurisdiction over the defendant. CFL timely appealed that judgment. CFL also filed a motion for an expedited appeal that was granted by this court on September 27, 2002.[3]

---

[3] On July 18, 2002, after the Western District of Texas granted APA's motion to dismiss, the District of New Jersey terminated its stay of APA's action against CFL and restored APA's case to active status. CFL answered APA's complaint and filed a counterclaim against APA several days later. According to the parties, CFL's counterclaim asserts claims against APA that are identical to the claims that CFL has asserted in this case. Discovery has commenced in that litigation and, according to the

4

II

This court reviews a district court's dismissal for lack of personal jurisdiction de novo. Alpine View Co. v. Atlas Copco A.B., 205 F.3d 208, 214 (5th Cir. 2000). When, as here, the district court did not conduct an evidentiary hearing on defendant's motion to dismiss, the party seeking to assert jurisdiction is required only to present sufficient facts to make out a prima facie case supporting jurisdiction. Id. (citing cases). The court shall accept as true that party's uncontroverted allegations (so long as the allegations are not merely conclusory) and resolve all factual conflicts in favor of the party seeking to invoke the court's jurisdiction. Id. (citing cases).

In a diversity action, a federal court may exercise personal jurisdiction over a defendant only to the extent permitted by the applicable law of the forum state. See Fed. R. Civ. P. 4(e)(1), (h)(1), and (k)(1). In this case, it is well-established that the Texas long-arm statute authorizes the exercise of personal jurisdiction to the full extent allowed by the Due Process Clause of the Fourteenth Amendment. See 2 Tex. Civ. Prac. & Rem. Code Ann. § 17.042 (West 1997); Alpine View, 205 F.3d at 214; Schlobohm v. Schapiro, 784 S.W. 2d 355, 357 (Tex. 1990).

The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in not being subject to the binding

_____

District of New Jersey docket, a pretrial schedule order has established April 1, 2003, as a discovery cutoff date.

5

judgments of a forum with which he has established no meaningful "contacts, ties, or relations." Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Exercising personal jurisdiction over a nonresident defendant is consistent with constitutional due process when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" Mink v. AAAA Development LLC, 190 F.3d 333, 336 (5th Cir. 1999) (quoting International Shoe Co., 326 U.S. at 316 (1945)). "'Minimum contacts' can be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." Id.; Alpine View, 205 F.3d at 215. When a nonresident defendant has "purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities," the defendant's contacts are sufficient to support the exercise of specific jurisdiction over that defendant. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985) (internal quotation marks omitted). General jurisdiction may be asserted when a defendant's contacts with the forum state are substantial and "continuous and systematic" but unrelated to the instant cause of action. See Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 n.8 (1984).

A. Contacts Sufficient To Establish General Jurisdiction

APA does not appear to have the kind of substantial, continuous, and systematic contacts with the State of Texas sufficient to support an exercise of general jurisdiction in this case. See Alpine View 205 F.3d at 217-18. See also Helicopteros Nacionales de Colombia, 466 U.S. at 414; Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437 (1952)(upholding the exercise of general jurisdiction where corporation had temporarily relocated its principal place of business to forum state by conducting meetings in the state, maintaining records and bank accounts in the state and making all important business decisions in the forum state). In this case, although APA has federal operating authority in Texas, APA has never registered to do business in the state, has never maintained any kind of business office or records in the state, and has never paid franchise taxes in the state. Likewise, even though APA routinely arranges and receives interline shipments to and from Texas and apparently sends sales people to the state on a regular basis to develop business, negotiate contracts, and service national accounts, APA has never actually operated any trucks or picked up or delivered any freight in Texas. Even if APA's contacts with the state of Texas have been, in some sense, "continuous and systematic," APA's activities, in toto, are clearly not substantial enough to justify subjecting APA to suit in the Western District of Texas based on a theory of general personal

7

jurisdiction. See Wilson v. Belin, 20 F.3d 644, 649-51 (5th Cir. 1999) (distinguishing Perkins on this basis and holding that court lacked general personal jurisdiction over the defendant, despite the fact that defendant had a relationship with a Texas law firm and engaged in various professional and pro bono projects in the State over a period of several years).[4]

B.    Contacts Sufficient To Establish Specific Jurisdiction

Specific jurisdiction is another matter, however.  APA does appear to have contacts with the State of Texas related to the transaction and events giving rise to this specific cause of action that are sufficient to support specific jurisdiction.  See Burger King, 471 U.S. at 474-79.

The record supports that APA sent two representatives to Texas in August of 2000 to meet with CFL at its headquarters in Waco. APA provided CFL with information about APA.  It also obtained information about CFL with the hope of finding a partner in Texas to interline freight to the East Coast.  Although the district described this merely as a trip "for the purpose of looking for additional business," there seems to be no serious dispute that

---

[4]    CFL argues that APA has substantial, continuous, and systematic contacts with the State of Texas through the operation of APA's website.  See Brief of Appellant at 18-19 (citing Mink v. AAAA Development, L.L.C., 190 F.3d 333 (5th Cir. 1999)).  This argument is meritless.  There is no evidence that APA has ever entered into contracts, conducted business transactions, or otherwise interacted with Texas residents via its website.

8

this meeting led the parties to negotiate and enter into their Interline Agreement.[5]  Furthermore, although the parties dispute whether the <u>formal</u> negotiations of the Interline Agreement took place in Waco, Texas or North Bergen, New Jersey, the record appears to indicate that all of the formal negotiations took place via telephone and written correspondence between the two parties from their respective headquarters.  In other words, APA can not really dispute the fact that, during the course of negotiations, APA specifically and deliberately "reached out" to a Texas corporation by telephone and mail with the deliberate aim of entering into a long-standing contractual relationship with a Texas corporation.  <u>See</u> <u>Burger King</u>, 471 U.S. at 479-80 (holding that Rudzewicz "reached out" beyond Michigan and made contact with Florida when he negotiated with a Florida corporation (Burger King) for a franchise that envisioned long-term connections between his business and Burger King in Florida and communicated with the corporation by mail and by telephone).

Furthermore, by entering into the Interline Agreement, APA knew that it was affiliating itself with an enterprise based

_____

[5]     In its brief, APA relies heavily on the district court's characterization of the facts in the record and the allegations in the complaint.  APA's reliance on the district court findings and characterizations is misplaced.  It is well established that this court reviews a district court order dismissing a complaint for lack of jurisdiction <u>de novo</u>.  Under the circumstances,  there is no basis in law for this court to defer to the district court's characterizations of jurisdictional facts, especially when those characterizations were made without the benefit of an evidentiary hearing.

9

primarily in Texas. Cf. Burger King, 471 US. at 480 (making essentially the same point about a Michigan defendant who entered into a franchise agreement with Florida-based Burger King). See also Travelers Health Ass'n v. Virginia, 339 U.S. 643, 647 (1950) (upholding personal jurisdiction based on the fact that defendant created "continuing obligations" between himself and a resident of the forum). Furthermore, APA presumably knew that many of CFL's customers would also come from that state. Although APA does not appear to have ever picked up freight for CFL in Texas or delivered freight to CFL or customers in Texas pursuant to the Interline Agreement, there can be no question that APA took "purposeful and affirmative action" by entering into the Interline Agreement, providing CFL with pricing and shipping information, and agreeing to accept shipments by CFL from Texas for Texas customers that had the clearly "foreseeable" effect of "causing business activity in the forum state." See Mississippi Interstate Express, Inc. v. Transpo, Inc., 681 F.2d 1003, 1007 (5th Cir. 1982). See also Burger King, 471 U.S. at 476 (holding that specific personal jurisdiction cannot be avoided merely because the defendant did not physically enter the state and that it may be based on actions that are purposefully directed toward a resident of a forum state.)[6]

---

[6] Of course, the "unilateral activity" of a plaintiff who claims some relationship with a nonresident defendant alone cannot satisfy the requirement of contact with the forum state. Burger King, 471 U.S. at 474 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)). However, a defendant can purposefully contact the forum state and avail itself of the benefits and protections of the

These contacts by APA with the state of Texas cannot be characterized as "random," "fortuitous," or "attenuated." See Burger King, 471 U.S. at 474, 478-80. Although the Interline Agreement apparently does not contain a forum selection clause, a choice of law clause, or some other provision that could have put APA on specific notice that it might be amenable to suit in Texas, see id. at 481, neither does the Agreement contain any provision that would give APA reason to think that it could not be haled into court in Texas in the event that APA allegedly breached its agreement with CFL. Cf. Marathon Oil, 182 F.3d 291, 295 (5th Cir. 1999) (no general or specific personal jurisdiction based on the presence of defendant at three business meetings in Texas where the contract at issue contained clauses providing for Swedish arbitration according to Norwegian law). Under any "highly realistic" and non-"mechanical" understanding of the Interline Agreement, its negotiations, and its future consequences for the parties' business relationship, it is clear that APA purposefully directed its in-state and out-of-state activities at a resident of

_____

forum's laws by creating continuing obligations between itself and residents of the forum. Id. Thus, this circuit has held that a nonresident can establish contact with the forum by taking purposeful and affirmative action, the effect of which is to cause business activity (foreseeable by the defendant) in the forum state. Mississippi Interstate Express, Inc. v. Transpo, Inc., 681 F.2d at 1007. Although Transpo was decided several years before Burger King, the Supreme Court's landmark decision on the constitutional foundation of personal jurisdiction in contract cases, there is nothing in Transpo that seems inconsistent with Burger King.

11

the forum (namely, CFL) with the aim of establishing a long-term association with that resident and with the foreseeable and intended result of causing economic activity within the forum state. Based on these facts, APA should have reasonably anticipated being haled into court in Texas on breach of contract claims related to that Interline Agreement, notwithstanding APA's relatively brief <u>physical</u> presence in the state. <u>See</u> <u>Burger King</u>, 471 U.S. at 474-75.

Furthermore – and quite apart from the ultimate merits of the claim – APA should have reasonably anticipated being haled into court in Texas on alleged intentional tort claims that are directly related to APA's performance under the Interline Agreement. <u>See</u> <u>Calder v. Jones</u>, 465 U.S. 783, 789 (1984) (holding defendant subject to personal jurisdiction in California based on foreseeable effects in that state of allegedly libelous conduct committed in Florida). Although mere allegations of tortious interference with a forum resident's contractual rights are not sufficient to establish specific personal jurisdiction, <u>see</u> <u>Panda Brandywine Corp. v. Potomac Electric Power Co.</u>, 253 F.3d 865 (5th Cir. 2001) (affirming dismissal for lack of personal jurisdiction), it is clear that specific personal jurisdiction may be based on intentionally tortious conduct that is purposefully directed toward the forum state. <u>Id.</u> at 869. While we express no view on the ultimate merits of CFL's intentional tort claims, at this stage of the proceeding we are obligated to assume CFL's non-conclusory

12

allegations are true. <u>Alpine View</u>, 205 F.3d at 214. Based on CFL's complaint, we find that CFL has pled facts that are sufficient to show that APA committed intentional torts that were purposefully directed at APA's contractual business relationship with another Texas entity. Specifically, CFL has alleged that APA was aware of CFL's contractual relationship with Dell Computers and that APA intentionally attempted to interfere with that relationship by holding Dell freight hostage in New Jersey and by manipulating the price of freight delivery in the northeast. CFL has alleged further that APA's actions actually harmed the relationship between CFL and Dell Computers resulting in damages above the statutory minimum for federal diversity jurisdiction. <u>See</u> Plaintiff's First Amended Complaint ¶ 4.04. Although APA's alleged tortious actions apparently involved physical assets held by APA in New Jersey, it is no "mere fortuity" that CFL allegedly suffered injury in Texas as a result of APA's conduct. <u>Cf.</u> <u>Panda Brandywine Corp.</u>, 253 F.3d at 869-70. Texas is not only CFL's home state; it is also the primary location of CFL's business relationship with Dell Computers. Under the circumstances, it is not unreasonable for APA to be haled into court in the Western District of Texas for alleged intentional interference with the contractual relationship of two Texas-based companies whose business dealings are based in Texas. <u>Id.</u>[7]

---

[7] In contrast in <u>Panda Brandywine Corp.</u>, a panel of this court held that the district court lacked personal jurisdiction

13

C. Traditional Notions Of Fair Play And Substantial Justice

Once a plaintiff establishes minimum contacts between the defendant and the forum State, the burden of proof shifts to the defendant to show that the assertion of jurisdiction is unfair and unreasonable. Wien Air Alaska, Inc. v. Brandt, 195 F.3d 208, 215 (5th Cir. 1999). The defendant must make a "compelling case." Burger King, 471 U.S. at 477. In determining whether the exercise of jurisdiction is fair and reasonable, the court must balance: (1) the burden on the nonresident defendant of having to defend itself in the forum; (2) the interests of the forum state in the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in the most efficient resolution of controversies; and (5) the shared interests of the states in furthering fundamental social policies. Id. See generally Asahi Metal Indus. Co. v. Superior Court, 480 U.S. 102, 115 (1987).

In this case, APA argues that the company will be substantially burdened if it is required to send executives and records to defend the company in Texas; that the State of Texas itself has little interest in this case compared to New Jersey; and that CFL's interest in litigating the case in Texas is purely

_____

over defendant in Texas for tortious interference with the financing arrangements of a Maryland power generating plant. According to the court, personal jurisdiction was lacking because defendant's alleged tortious interference had "no relation to Texas other than the fortuity that [the plaintiffs] reside[d] there." Id.

14

strategic in nature and very slight compared to the burden that will be placed on APA if APA is required to defend itself in Texas. None of these arguments persuasively demonstrates that "traditional notions of fair play and substantial justice" would be offended by asserting personal jurisdiction over APA in this case. As CFL argues in its brief, the burden of requiring APA to litigate in Texas is no greater than the burden of requiring CFL to litigate in New Jersey. Furthermore, Texas would seem to have an interest in adjudicating its domiciliary's alleged breach of contract and tortious interference claims that is sufficient to satisfy Due Process concerns about traditional notions of fair play and substantial justice. CFL's interest in obtaining convenient and effective relief also suggests that the Western District of Texas is not an unfair or unjust place to litigate this dispute. As CFL argues, the Western District of Texas has subpoena power over documents and witnesses of Dell Computers that may be necessary to prove CFL's tortious interference claims against APA.

At this point, the only interest that might arguably cut against the assertion of personal jurisdiction in this case is the interstate judicial system's interest in the most efficient resolution of controversies. As noted above, CFL has filed a counterclaim in <u>A-P-A Transport Corp. v. Central Freight Lines, Inc.</u>, Cause No. 01-CV-3445 (D.N.J.) that asserts claims that are identical to the claims asserted in this case. Under normal circumstances, the first to file rule would point to the Western

15

District of Texas as the appropriate forum for the adjudication of all the claims arising out of the parties' alleged conduct under the Interline Agreement. However, in this case, litigation has been proceeding in the District of New Jersey for six months during the pendency of this appeal. On account of this, the District of New Jersey might conceivably be the most efficient place to resolve the parties' controversies. Nevertheless, even if the District of New Jersey is a marginally more efficient forum for resolution of these claims at this point, asserting personal jurisdiction over APA in this case would not seem to be unconstitutionally offensive to traditional notions of fair play and substantial justice.[8]

In short, APA has failed to present a compelling case in support of its claim that asserting personal jurisdiction in this case would be offensive to traditional notions of fair play and substantial justice. See Burger King, 471 U.S. at 477.

---

[8]     On remand to the Western District of Texas, the district court may be called upon to decide whether to transfer the case to the District of New Jersey. Similarly, the New Jersey district court may be asked to consider whether it should transfer the cases filed there under the "first to file" rule that prevails in the federal courts. Western Gulf Maritime Association v. Ila Deep Sea Local 24, South Atlantic and Gulf Coast District of the Ila; AFL, 751 F.2d 721, 728-29 (5th Cir. 1985) (holding that the court with prior jurisdiction over the common subject matter should resolve all issues presented in related actions). Because the question of venue is not properly before us on appeal, we express no view on the subject, and our opinion today should not be construed by any court to suggest otherwise.

16

III

In sum, we conclude that APA may not avoid the personal jurisdiction of the Western District of Texas merely because APA did not physically enter the State of Texas to deliver freight to customers or interline freight to CFL for delivery to some other final destination in the southwestern United States. See Burger King, 471 U.S. at 476. Although territorial presence and activity will frequently enhance a defendant's relationship to the forum state and reinforce the reasonableness of subjecting it to suit there, an inescapable fact of modern life dictates that a substantial amount of business will be transacted by mail and by electronic wire communications across state lines. Id. So long as a commercial actor's efforts are "purposefully directed" toward a resident of another State, the mere absence of physical contacts within the forum state cannot defeat personal jurisdiction there. Id. In this case, APA clearly did purposefully "reach out" to CFL in Texas by visiting CFL's headquarters and engaging in negotiations with CFL by mail and by telephone. Furthermore, APA clearly did so with the goal of establishing a long-term association with CFL and with the foreseeable result of causing economic activity within the forum state. On account of this, APA had fair warning that it could be sued in Texas for alleged breach of the Interline Agreement and for alleged intentional torts arising out of its performance under that agreement. Accordingly,

we REVERSE the judgment of the district court and REMAND for further proceedings.

REVERSED AND REMANDED.