**BORDER STEEL, INC., Plaintiff,**

v.

**PACIFIC CENTURY CUSTOMS SERVICE, INC., Defendant.**

**No.  EP–04–CA–368–PRM.**

United States District Court,
W.D. Texas,
El Paso Division.

Jan. 31, 2006.

Ken K. Slavin, Kemp Smith, P.C., El Paso, TX, for Plaintiff.

Seth A. Nichamoff, Georgantas & Walters, Houston, TX, Stephen Harrison Nickey, Mounce, Green, Myers, Safi, & Galatzan, P.C., El Paso, TX, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

PHILIP R. MARTINEZ, District Judge.

On this day, the Court considered Defendant Pacific Century Customs Service, Inc.'s ("Defendant") "Motion to Dismiss for Lack of Personal Jurisdiction" ("Motion to Dismiss"), filed on April 28, 2005, Plaintiff Border Steel, Inc.'s ("Plaintiff") "Amended Response to the Motion to Dismiss of Defendant Pacific Century Customs Service, Inc." ("Response"), filed on June 8, 2005, and Defendant's "Reply to Plaintiff Border Steel, Inc.'s Response to the Motion to Dismiss of Defendant Pacific Century Customs Service, Inc." ("Reply"), filed on June 10, 2005 in the above-captioned cause. After due consideration, the Court is of the opinion that Defendant's Motion to Dismiss should be granted for the reasons set forth below.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Texas corporation with its principal place of business in Texas. Pl.'s

Resp. ¶ 2. In March of 2004, Plaintiff began negotiating with former defendant Possehl, Inc. ("Possehl"),[1] an international supplier of raw materials, for the purchase and importation of silicon manganese and ferro manganese ("the shipments") from China with the ultimate destination of Texas. Pl.'s Third Am. Compl. ¶ 10. Possehl and Brilliant Logistics, Inc. ("Brilliant"), a freight forwarding company, arranged for customs brokers to clear the shipments through customs in California. Pl.'s Third Am. Compl. ¶ 12; Def.'s Mot. to Dismiss ¶¶ 6–7. Defendant was the arranged customs broker for the first two shipments. Pl.'s Third Am. Compl. ¶ 12. Two separate customs brokers cleared the third shipment. Pl.'s Third Am. Compl. ¶¶ 12, 19. On May 21, 2004, Plaintiff executed a power of attorney authorizing Defendant to act as its agent for the purpose of clearing the shipments through customs in California. Pl.'s Resp. ¶ 4. Defendant allegedly misidentified these shipments as cement in the entry summaries it submitted to customs. Pl.'s Third Am. Compl. ¶¶ 13–14, 20–21. As a result, Plaintiff initiated the present lawsuit asserting claims of breach of contract and negligence against Defendant. Pl.'s Third Am. Compl. ¶¶ 33–34.

On April 28, 2005, Defendant filed a Motion to Dismiss for Lack of Personal Jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Defendant asserts that it lacks the constitutionally requisite minimum contacts with Texas for the Court to exercise personal jurisdiction.

## II. LEGAL STANDARD

■ The plaintiff bears the burden of establishing jurisdiction. *Gundle Lining Constr. Corp. v. Adams County Asphalt,* *Inc.,* 85 F.3d 201, 204 (5th Cir.1996). However, when, as here, a federal district court does not hold an evidentiary hearing on the motion, the plaintiff need only make out a prima facie case of personal jurisdiction. *Central Freight Lines Inc. v. APA Transport Corp.,* 322 F.3d 376, 380 (5th Cir.2003). In this situation, a court must accept as true the plaintiff's uncontroverted, non-conclusory allegations and resolve all factual conflicts in favor of the plaintiff. *Id.*

■ A federal district court may exercise jurisdiction over a nonresident defendant only to the extent permitted by: (1) the Texas long-arm statute and (2) federal due process. *Gundle Lining Constr. Corp.,* 85 F.3d at 204. The Texas long-arm statute has been interpreted "to extend to the limits of due process." *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir.1986). Accordingly, a federal district court sitting in Texas need only consider whether the exercise of jurisdiction comports with the requirements of federal due process. *Id.*

■ The exercise of jurisdiction is constitutionally sound when: "(1) the defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Mink v. AAAA Dev. LLC,* 190 F.3d 333, 336 (5th Cir.1999) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The minimum contacts analysis may be further subdivided into two types of contacts: contacts which result in general personal jurisdiction and contacts

1. On November 17, 2005, the Court issued an Order dismissing any and all claims existing between Plaintiff and Possehl.

which give rise to specific personal jurisdiction. *Central Freight Lines Inc.*, 322 F.3d at 381. A court may exercise general personal jurisdiction over a nonresident defendant where the defendant's contacts with the forum state are "substantial and 'continuous and systematic' " but unrelated to the claims in the suit. *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Specific jurisdiction applies when the controversy is related to or arises out of a nonresident's contacts with the forum state. *Id.* Ultimately, the constitutional benchmark of the personal jurisdiction analysis "remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Burger King v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting *Int'l Shoe Co.*, 326 U.S. at 316, 66 S.Ct. 154).

## III. DISCUSSION

### A. Minimum Contacts

■ Plaintiff asserts that the following contacts between Defendant and Texas create the constitutionally requisite minimum contacts: (1) Defendant entered into a contract with Plaintiff, a Texas entity; (2) Defendant mailed entry summaries to Plaintiff in Texas; and (3) Defendant acted as Plaintiff's agent pursuant to a power of attorney. After due consideration, the Court is of the opinion that Defendant's contacts with Texas are insufficient to establish a prima facie case of personal jurisdiction over Defendant for the reasons set forth below.

### 1. General Personal Jurisdiction

The contacts referenced by Plaintiff are not the type of continuous, systematic, and substantial contacts necessary to support the exercise of general personal jurisdiction. *See Central Freight Lines Inc.*, 322 F.3d at 381 (noting that general personal jurisdiction is proper only when the nonresident defendant's contacts with the forum state are substantial, continuous, and systematic). It is undisputed that Defendant does not maintain an office or a regular place of business in Texas, nor is Defendant registered to conduct business in Texas. Furthermore, Defendant does not maintain a registered agent for services of process in Texas. Defendant does not clear shipments through customs in Texas. There is no indication that Defendant solicits business, advertises, or markets its services in Texas.[2] Rather, all of Defendant's alleged contacts with Texas appear connected with Plaintiff's claims in this suit, implicating specific rather than general personal jurisdiction. *See Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir.1999) (noting that specific jurisdiction exists "when the nonresident's contacts with the forum state arise from or are directly related to the cause of action"). Accordingly, Plaintiff has failed to establish a prima facie case that Defendant maintained the quality of contacts with Texas necessary for the Court to exercise general personal jurisdiction.

### 2. Specific Personal Jurisdiction

Plaintiff claims that Defendant purposefully established minimum contacts with Texas when it: (1) contracted with Plain-

---

**2.** The only contact which potentially implicates the Court's general personal jurisdiction is Plaintiff's assertion that Defendant advertises itself as a national firm and therefore should expect to defend itself in all forums in which it engages in business. However, accepting this allegation as true, it is insufficient to demonstrate that Defendant maintains continuous, systematic ties specifically with Texas. *See Growden v. Ed Bowlin & Assoc., Inc.*, 733 F.2d 1149, 1151–52 (5th Cir.1984) (noting that a bare reference to national advertising without more is insufficient to constitute purposeful availment).

tiff, (2) mailed entry summaries to Plaintiff; and (3) became Plaintiff's agent. The Court is not persuaded that these contacts demonstrate that Defendant purposefully availed itself of the privilege of doing business within Texas to the extent that it invoked the benefits and protections of Texas law.

Plaintiff alleges that Defendant "purposefully established minimum contacts with Texas when it contracted with [Plaintiff] to provide its services as a customs broker in furtherance of delivering the goods to [Plaintiff] in ... Texas." Pl.'s Resp. ¶ 8. With respect to contacts predicated on interstate contractual obligations, a nonresident defendant's contract with a Texas resident cannot alone support the assertion of personal jurisdiction. *Holt Oil & Gas Corp.*, 801 F.2d at 778; *see also Burger King Corp.*, 471 U.S. at 478, 105 S.Ct. 2174 ("If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Rather, a court must assess the "prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [the non-resident defendant] purposefully established minimum contacts with the forum." *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir.1985).

The facts surrounding the parties' contractual relationship do not warrant a finding of specific personal jurisdiction. Plaintiff and Defendant have no history of business dealings together. Additionally, Plaintiff offers no proof that the underlying contract was merely the prelude to a long-lasting contractual relationship. *Contra Central Freight Lines Inc.*, 322 F.3d at 381 (finding specific jurisdiction to exist where defendant "specifically and deliberately 'reached out' to a Texas corporation ... with the deliberate aim of entering into a long-standing contractual relationship"). On the contrary, Defendant's employment was limited to the clearance of the first two of three shipments arriving in California. Plaintiff employed separate customs brokers to clear the third shipment. Furthermore, Defendant performed the entirety of its contractual obligations in California, not Texas. *See Holt Oil & Gas. Corp.*, 801 F.2d. at 778 (noting that where all material performance under the contract occurs outside of Texas, specific jurisdiction is unlikely to exist). The fact that a third party subsequently transported the shipments to Texas is inapposite to Defendant's minimum contacts analysis. Defendant played no role in the subsequent transport to Texas. Defendant would presumably have conducted its activities in an identical fashion regardless of the ultimate destination of the goods. Lastly, the parties' actual dealings under the contract belie Plaintiff's assertion that minimum contacts exist. The business dealings which prompted the current suit were attenuated at best, negotiated and executed primarily through intermediaries.[3] *See Burger King*, 471 U.S. at 486, 105 S.Ct. 2174 (noting that "[t]he 'quality and nature' of interstate transactions may sometimes be so 'random,' 'fortuitous,' or 'attenuated'" that personal jurisdiction is

---

**3.** Plaintiff did not directly secure Defendant's brokerage services, nor did Plaintiff directly pay Defendant. Rather, third parties (Possehl and/or Brilliant) secured customs brokers for Plaintiff, transmitted the necessary information to Defendant for the clearance of the goods, invoiced Plaintiff for Defendant's services, and payed Defendant for its services. Def.'s Mot. to Dismiss ¶¶ 6–8; Pl.'s Resp., Aff. of Jaime Guillermo Sada ¶ 6; Pl.'s Third Am. Compl. ¶ 12.

not warranted) (internal quotations omitted). Ultimately, the only evidence of direct contacts between Defendant and Texas are the mailed entry summaries and the faxed power of attorney. However, the exchange of mail and communications in the course of carrying out a contract is insufficient to constitute purposeful availment. *Holt Oil & Gas. Corp.*, 801 F.2d. at 778. Rather, these exchanges with Plaintiff rest on "nothing but 'the mere fortuity that [Plaintiff] happens to be a resident of the forum.'" *Id.* (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir.1985)).

■ Plaintiff also alleges that Defendant purposefully established minimum contacts when Defendant became Plaintiff's agent through the execution of the power of attorney. Yet, the mere existence of an agency relationship is insufficient to establish jurisdictional minimum contacts. *Trinity Indus., Inc. v. Myers & Assoc., Ltd.*, 41 F.3d 229, 230 (5th Cir. 1995). Plaintiff fails to demonstrate that the power of attorney was part of an enduring or substantial business relationship between the parties, such that Defendant had purposefully availed itself of the privilege of conducting business within Texas. *Cf. id.* (asserting specific jurisdiction based on a long standing attorney-client relationship). Rather, Plaintiff's evidence only suggests that the power of attorney existed for the limited purpose of carrying out the equally limited contractual relationship.[4] Because the power of attorney was merely incident to the parties' contractual relationship, which the Court has already

determined is insufficient to establish minimum contacts, it adds little to the overall minimum contacts analysis.

Considering the totality of the evidence and accepting all of Plaintiff's uncontroverted allegations as true, Plaintiff has still failed to demonstrate to the Court that Defendant purposefully established minimum contacts with Texas. All of Defendant's alleged contacts with Texas stem from what amounts to nothing more than a brief and attenuated contractual relationship. *See Stuart*, 772 F.2d at 1193 (noting that contacts arising from fleeting contractual relationships are insufficient to establish specific personal jurisdictions). Furthermore, none of these contacts indicate that Defendant affirmatively acted to create a substantial connection with Texas. *See Burger King*, 471 U.S. at 475, 105 S.Ct. 2174 ("Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State.") (internal quotations omitted). The Fifth Circuit has held that "the combination of mailing payments to the forum state, engaging in communications surrounding the execution and performance of a contract, and the fact that a nonresident enters into a contract with a resident are insufficient to establish the requisite minimum contacts necessary to support the exercise of personal jurisdiction over a nonresident defendant." *Gundle Lining Constr. Corp.*, 85 F.3d at 205 (citing *Stuart*, 772 F.2d at 1193). In the present case, Plaintiff directs the Court to little more than a contract and some mail-

---

4. Plaintiff does not contest that this was a limited power of attorney. The title of the contract creating the power of attorney, "Customs Power of Attorney," indicates that its scope was limited to the clearance of the two shipments through customs. Pl.'s Resp, Ex. B. In fact, Plaintiff concedes that the power of attorney was executed for the limited purpose

of allowing Defendant to clear Plaintiff's shipments through customs. Pl.'s Resp., Aff. of Jaime Guillermo Sada ¶ 4. Defendant's conduct under the power of attorney was further limited by the fact that Plaintiff only contracted Defendant to clear a portion of the total ordered shipments. Pl.'s Third Am. Compl. ¶¶ 12, 19.

ings. These are insufficient grounds to establish a prima facie case of personal jurisdiction over Defendant.

### B. Fair Play and Substantial Justice

The exercise of jurisdiction must comport with both the requirements of minimum contacts and fair play and substantial justice. *Growden,* 733 F.2d at 1150. Accordingly, a court does not need to consider the fairness of exercising personal jurisdiction where a plaintiff fails to establish the existence of the requisite minimum contacts. *See Felch v. Transportes Lar–Mex SA de CV,* 92 F.3d 320, 324 (5th Cir.1996) (noting that a court only inquires into the fairness prong once minimum contacts have been established). Having concluded that Defendant did not purposefully establish minimum contacts with Texas, it is unnecessary to consider whether maintenance of the suit would offend traditional notions of fair play and substantial justice.

## III. CONCLUSION

In sum, Plaintiff has failed to demonstrate that Defendant generally or specifically maintained contacts with Texas of a quality sufficient to support a prima facie case of personal jurisdiction. As a consequence, the Court is compelled to dismiss Plaintiff's suit against Defendant pursuant to Federal Rule of Civil Procedure 12(b)(2).

Accordingly, **IT IS ORDERED** that Defendant Pacific Century Customs Service Inc.'s "Motion to Dismiss for Lack of Personal Jurisdiction" is **GRANTED.**

**IT IS FURTHER ORDERED** that the above-captioned cause is **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Clerk shall close this matter.