**PHILIP MORRIS USA, INC., Plaintiff,**

v.

**William W. LEE et al., Defendants.**

**No. EP–05–CV–490–PRM.**

United States District Court,
W.D. Texas,
El Paso Division.

Dec. 28, 2006.

Bruce A. Koehler, Carl H. Green, Mounce, Green, Myers, Safi & Galatzan, P.C., El Paso, TX, John C. Ulin, Los Angeles, CA, Kalai Lau, Samuel R. Watkins, Heller Ehrman LLP, Seattle, WA, for Plaintiff.

Robert A. Skipworth, Attorney at Law, Corey W. Haugland, James & Haugland, P.C., El Paso, TX, for Defendants.

Felipe Castaneda, El Paso, TX, pro se.

## ORDER GRANTING DEFENDANTS SOUTHEASTERN CARGO SERVICES, INC. AND JOHN TOMINELLI'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

MARTINEZ, District Judge.

On this day, the Court considered (1) Defendants Southeastern Cargo Services, Inc. ("Southeastern") and John Tominelli's (collectively "Defendants") "Motion to Dismiss for Lack of Jurisdiction and Brief in Support," filed on June 15, 2006; (2) Plaintiff Philip Morris USA, Inc.'s "Opposition to the Motion to Dismiss for Lack of Jurisdiction by Southeastern Cargo Services, Inc. and John Tominelli," filed on June 29, 2006; and (3) Defendants' "Reply to Plaintiff's Motion to Dismiss for Lack of Personal Jurisdiction," filed on July 6, 2006 in the above-captioned cause. After due consideration, the Court is of the opinion that Defendants' Motion to Dismiss should be granted for the reasons set forth below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a Virginia corporation with its principal place of business in Virginia. Pl.'s Second Am. Compl. ¶ 14. Prior to its voluntary dissolution in 2003, Southeastern was a Florida corporation. *Id.* ¶ 23; Defs.' Mot. to Dismiss 3. Southeastern "specialized in providing logistics services to companies purchasing all manner of goods." Defs.' Mot. to Dismiss, Tominelli Aff. ¶ 1. Specifically, Southeastern provided inspection and escrow services. *Id.* Tominelli is an individual who resides in Florida, and at all relevant times served as the president of Southeastern. Pl.'s Second Am. Compl. ¶ 22; Defs.' Mot. to Dismiss, Tominelli Aff. ¶ 1.

Plaintiff is the registered owner of the Marlboro trademark and the Marlboro Roof Design Label trademark, which it uses in connection with its various tobacco products. Pl.'s Second Am. Compl. ¶ 6. Plaintiff alleges that Southeastern and Tominelli "were part of a conspiracy to illegally import into the United States a large quantity of counterfeit Marlboro brand cigarettes for commercial distribution." Pl.'s Resp. ¶ 1.

On approximately August 10, 2003, Southeastern contracted to hold in escrow certain funds to be paid by Kagro Company, Inc. ("Kagro") to Synergy Trading Group, Inc. ("Synergy") (each a named defendant in this case). Defs.' Mot. to Dismiss 4. At that time, Southeastern was aware that the transaction involved the purchase of cigarettes then-located in Curacao. *Id.*

On August 25, 2003, Defendants received a wire transfer in the amount of $39,000.00 from Kagro for deposit in an account Southeastern used for escrow (the

"Special Account"); this transfer apparently constituted a down payment for the cigarettes. *Id.* at 5; Pl.'s Resp. ¶ 16. Southeastern also agreed to inspect the cigarettes. Defs.' Mot. to Dismiss 4. On August 27, 2003, Tominelli traveled to Curacao and conducted his inspection. *Id.* at 5; Pl.'s Resp. ¶ 2. He then completed a report of the inspection, and faxed it to Synergy. Defs.' Mot. to Dismiss 4; Pl.'s Resp. ¶ 2. Defendants contend that the inspection was limited to an assessment of the cigarettes' quantity and quality, but in no way required Tominelli to verify the cigarettes' authenticity. Defs.' Mot. to Dismiss 4.

After the inspection, Tominelli wrote a check for $2,826.59 from the Special Account to Southeastern. *Id.* Defendants claim that this was the only benefit received by Tominelli and Southeastern, and that it represented $2,000.00 for an inspection fee and $826.59 for reimbursement of Tominelli's travel. *Id.* Kagro then wired an additional $210,450.00 to Southeastern for deposit in the Special Account. *Id.,* Tominelli Aff. ¶ 22; Pl.'s Resp. ¶ 2. Plaintiff contends that Tominelli then made several disbursements from the Special Account: $30,168.50 to Ronald Morrison, a Texas resident; $28,208.50 to Synergy; $16,727.00 to Susumu Corporation; and $166,500.00 to Susumu Trading. Pl.'s Resp. ¶ 2.

At that point, 978 master cases of cigarettes were shipped from Curacao with an intended destination of El Paso, Texas. *Id.* ¶ 3. The cigarettes were seized at the Port of Houston and determined to be counterfeit Marlboros. *Id.* As a result of this seizure, Plaintiff initiated this cause, asserting that numerous defendants conspired "to import, distribute and sell ... massive shipments of counterfeit cigarettes," in violation of the Lanham Act, the Tariff Act, and Texas statutory and common law. Pl.'s Second Am. Compl. ¶¶ 1, 5.

On June 15, 2006, Defendants filed the instant Motion to Dismiss, asserting that they lack the constitutionally requisite minimum contacts with Texas for the Court to exercise personal jurisdiction. Defs.' Mot. to Dismiss 1. Defendants argue in the alternative that Plaintiff's claims should be dismissed pursuant to Federal Rule of Civil Procedure 56, as "the Plaintiff cannot prove any facts according to which the trier of fact could find for the Plaintiff against the Defendants." *Id.*

## II. PERSONAL JURISDICTION

### A. Legal Standard

 When a defendant challenges personal jurisdiction, the plaintiff has the burden of establishing that jurisdiction exists. *Gundle Lining Constr. Corp. v. Adams County Asphalt, Inc.,* 85 F.3d 201, 204 (5th Cir.1996). When, as here, a federal district court does not hold an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. *Cent. Freight Lines Inc. v. APA Transport Corp.,* 322 F.3d 376, 380 (5th Cir.2003). A court must resolve all factual conflicts in favor of the plaintiff, and accept as true the plaintiff's uncontroverted and non-conclusory allegations. *Id.*

 A federal district court sitting in Texas may exercise jurisdiction over a nonresident defendant only to the extent permitted by (1) the Texas long-arm statute and (2) federal due process. *Gundle Lining Constr. Corp.,* 85 F.3d at 204. "[T]he Texas long-arm statute has been interpreted to extend to the limits of due process ...." *Holt Oil & Gas Corp. v. Harvey,* 801 F.2d 773, 777 (5th Cir.1986). Accordingly, a federal district court sitting in Texas need only consider whether the exercise of jurisdiction comports with the requirements of federal due process. *Id.*

The exercise of jurisdiction over a defendant is constitutionally sound when "(1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Minimum contacts may give rise to general or specific jurisdiction. When a nonresident defendant has "continuous and systematic general business contacts" with the forum state, a court has general jurisdiction over any suit brought against the defendant. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). If the defendant's contacts do not satisfy general jurisdiction, a court may nonetheless exercise specific jurisdiction over "a defendant in a suit arising out of or related to the defendant's contacts with the forum." *Id.* at 414 n. 8, 104 S.Ct. 1868. In this motion, only specific personal jurisdiction is at issue.[1]

The Fifth Circuit has consolidated the personal jurisdiction inquiry to the following three-prong test:

(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposefully directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there;

(2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and

(3) whether the exercise of personal jurisdiction is fair and reasonable.

*Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir.2002).

### B. Minimum Contacts

To determine whether Defendants have the requisite minimum contacts with Texas, the Court "must identify some act whereby [they] 'purposely avail[ed] [themselves] of the privilege of conducting activities [there], thus invoking the benefits and protections of its laws.'" *Luv n' care, Ltd. v. Insta–Mix, Inc.*, 438 F.3d 465, 469–70 (5th Cir.2006) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)). It must be shown that the defendants "should reasonably anticipate being haled into court" in the forum state. *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

Plaintiff claims that Defendants purposefully established minimum contacts with Texas "by playing significant roles in a multi-million dollar sale of counterfeit cigarettes that were shipped to Texas to a business owned and operated by a Texas resident." Pl.'s Resp. ¶ 14. Specifically, Plaintiff contends that jurisdiction is proper because Defendants contracted to serve as an escrow agent for a transaction in which a product would be shipped to the forum state, and then agreed to inspect that product before its shipment. *Id.* ¶ 2. Plaintiff argues that Defendants necessarily knew that they were "rendering services to Texas residents." *Id.* ¶19. Plaintiff points to the pro forma invoice sent by Synergy to Kagro, a copy of which Defen-

---

**1.** Plaintiff does not argue that the Court could exercise general personal jurisdiction over Defendants. Furthermore, there is no evidence that Defendants maintained the type of continuous, systematic, and substantial contacts with Texas necessary to support the exercise of general personal jurisdiction. Rather, the only contacts Defendants are alleged to have with Texas relate to Plaintiff's claims in this suit, thus implicating specific rather than general personal jurisdiction.

dants received after agreeing to serve as an escrow agent. That invoice lists Kagro's address in El Paso. Defs.' Mot. to Dismiss, Tominelli Aff., Ex. A. Furthermore, Plaintiff notes that the wire transfers sent by Kagro to Defendants were sent from a Texas bank, and Defendants' later disbursements included one payment to a Texas resident. Pl.'s Resp. ¶ 2. The Court is of the opinion that, taken together, these contacts do not rise to the requisite level of minimum contacts.

■ When basing the exercise of personal jurisdiction on a defendant's contractual relations, a plaintiff must show more than the mere existence of a contract with a Texas resident. *Holt Oil & Gas Corp.*, 801 F.2d at 778. A court must look beyond the contract and consider "prior negotiations, contemplated future consequences, terms of the contract, and the parties' actual course of dealing to determine whether [the non-resident defendant] purposefully established minimum contacts with the forum." *Stuart v. Spademan*, 772 F.2d 1185, 1193 (5th Cir.1985). Here, Defendants' contract to provide inspection and escrow services was with Synergy, a Florida company, rather than Kagro, a Texas company. Defs.' Mot. to Dismiss 4. *See also* Pl.'s Resp. ¶ 2 (Plaintiff stating that "Synergy arranged for" Defendants to perform inspection and handle the money). There is no evidence that Defendants negotiated directly with Kagro in entering the contract. In fact, there is no evidence that Defendants even knew that a Texas resident was involved in the underlying transaction until after it agreed to act as an escrow agent. Thus, Defendants lack even a contractual relationship with a Texas resident, and the fact that Defendants' contract benefitted a Texas-resident third party was merely fortuitous. *See Miss. Interstate Express, Inc. v. Transpo, Inc.*, 681 F.2d 1003, 1006 (5th Cir.1982) (holding that contacts which are "fortuitous, not deliberate, de minimis, not substantial" do

not provide a basis for personal jurisdiction). Furthermore, Defendants state, and Plaintiff does not dispute, that Defendants have had no prior or subsequent dealings with Kagro. Defs.' Mot. to Dismiss ¶¶ 7–8. Plaintiff offers no proof that the underlying contract was merely the prelude to a long-lasting contractual relationship. *Cf. Cent. Freight Lines Inc.*, 322 F.3d at 381 (finding specific jurisdiction to exist where the defendant "specifically and deliberately 'reached out' to a Texas corporation ... with the deliberate aim of entering into a long-standing contractual relationship").

Standing alone, the contractual relationship offers no basis for a finding of specific jurisdiction, and nor do the terms of the contract allow the Court to conclude that Defendants were purposefully availing themselves of the opportunity to do business within Texas. The invoice sent to Defendants after they agreed to escrow funds indicates that Kagro had a Texas address, but all shipping information in the invoice refers only to "Buyer's final destination." Defs.' Mot. to Dismiss, Tominelli Aff., Ex. A. Similarly, the inspection report sent by Defendants to Kagro lists Kagro's Texas address, but includes no information regarding the place of shipment. *Id.* Ex. C. While a seller's knowledge that his product will be sent to a forum state may be a basis for jurisdiction, *Luv n' care*, 438 F.3d at 470, here Defendants knew only that the goods they were inspecting had been purchased by a Texas resident. There is no reason to conclude that Defendants knew, or had any control over, where the cigarettes would be sent.

Furthermore, Defendants performed the entirety of their contractual obligations in Florida and Curacao, rather than Texas. *See Holt Oil & Gas. Corp.*, 801 F.2d at 778 (noting that where all material performance under the contract occurs outside of Texas, specific jurisdiction is unlikely to

exist). The fact that a third party subsequently transported the shipments to Texas, without Defendants' knowledge or involvement, is inapposite to Defendants' minimum contacts analysis. Defendants played no role in the subsequent transport to Texas.

While Defendants received payments from Kagro through a Texas bank and sent a payment to Morrison, a Texas resident, these transactions also fail to establish a basis of jurisdiction. The Fifth Circuit has held that making payments to the forum state, even when combined with a contract with a resident of the forum state, does not constitute the purposeful availment of the opportunity to do business there. *Gundle Lining Constr. Corp.*, 85 F.3d at 205. Since Defendants' contract was with Synergy, these payments to and from Texas rest on "nothing but 'the mere fortuity that [a third party such as Kagro or Morrison] happens to be a resident of the forum.'" *Holt Oil & Gas Corp.*, 801 F.2d at 778 (quoting *Patterson v. Dietze, Inc.*, 764 F.2d 1145, 1147 (5th Cir.1985)).

■ Plaintiff further contends that Defendants' actions directly resulted in counterfeit cigarettes being shipped into Texas. Plaintiff argues that by inspecting the cigarettes, and issuing a report as to their condition, Defendants "purposefully induced [Kagro's] reliance in purchasing the counterfeit cigarettes for shipment into, and resale in, Texas." Pl.'s Resp. ¶ 18. Under what is known as the "stream of commerce" test, "a defendant's placing of its product into the stream of commerce with the knowledge that the product will be used in the forum state is enough to constitute minimum contacts." *Ruston Gas Turbines, Inc. v. Donaldson Co.*, 9 F.3d 415, 419 (5th Cir.1993). The Fifth Circuit has interpreted this test to require the "mere foreseeability or awareness" that the product will enter the forum state while in the stream of commerce. *Luv n'*

*care*, 438 F.3d at 470. This interpretation is based on the reasoning that "[w]here a defendant knowingly benefits from the availability of a particular state's market for its products, it is only fitting that the defendant be amenable to suit in that state." *Id.* However, the Fifth Circuit's statements regarding the "stream of commerce" test suggest that its application is restricted to defendants who exercise actual control in placing the product into the stream of commerce. *See Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 374 (5th Cir. 1987) (finding that jurisdiction exists when a nonresident's contact "stems from a product, sold or manufactured by the foreign defendant," and "the defendant delivered the product into the stream of commerce with the expectation that it would be purchased by or used by consumers in the forum state"). Here, Defendants' involvement in the shipment of the cigarettes is too attenuated. Defendants did not produce the cigarettes, nor did they sell them. In fact, Defendants never held any ownership interest in the cigarettes, and exercised no control whatsoever over the cigarettes' destination. Plaintiff's argument would lead to the exercise of jurisdiction over all logistics intermediaries in whatever forum the cargo ends up in, whether the destination was known to the intermediary or not. Such a strained understanding of the "stream of commerce" test cannot be sustained.

Considering the totality of the evidence and accepting all of Plaintiff's uncontroverted allegations as true, Plaintiff has failed to demonstrate to the Court that Defendants purposefully established minimum contacts with Texas. Defendants' alleged contacts with Texas stem from what amounts to nothing more than a brief and attenuated contractual relationship with a party who was itself doing business with a Texas resident. *See Stuart*, 772 F.2d at 1193 (noting that contacts arising

from fleeting contractual relationships are insufficient to establish specific personal jurisdiction. Furthermore, none of these contacts indicate that Defendants affirmatively acted to create a substantial connection with Texas. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ("Jurisdiction is proper ... where the contacts proximately result from actions by the defendant *himself* that create a substantial connection with the forum State." (internal quotations omitted)). For these reasons, the Court is of the opinion that Defendants' contacts with Texas are insufficient, and thus the Court lacks personal jurisdiction over Defendants in this case.

### C. Fair Play and Substantial Justice

■ The exercise of personal jurisdiction must comport with both the requirements of minimum contacts and fair play and substantial justice. *Growden v. Ed Bowlin & Assocs., Inc.*, 733 F.2d 1149, 1150 (5th Cir.1984). Accordingly, a court need not consider the fairness of exercising personal jurisdiction where a plaintiff fails to establish the existence of the requisite minimum contacts. *See Felch v. Transportes Lar–Mex SA DE CV*, 92 F.3d 320, 324 (5th Cir.1996) (noting that a court only inquires into the fairness prong once minimum contacts have been established). Having concluded that Defendants did not purposefully establish minimum contacts with Texas, it is unnecessary to consider whether maintenance of the suit would offend traditional notions of fair play and substantial justice.

### III. SUMMARY JUDGMENT

In their Motion to Dismiss, Defendants argue in the alternative that the Court should dismiss the claims against Defendants pursuant to Federal Rule of Civil Procedure 56 ("Rule 56"). Because the Court determines that it has no jurisdiction to proceed against Defendants, it need not consider this alternative basis for dismissal.

### IV. CONCLUSION

In sum, Plaintiff has failed to demonstrate that Defendants had contacts with Texas of a quality sufficient to support a prima facie case of personal jurisdiction. As a consequence, the Court is compelled to dismiss Plaintiff's claims against Defendants pursuant to Federal Rule of Civil Procedure 12(b)(2).

Accordingly, **IT IS ORDERED** that Defendants Southeastern Cargo Services, Inc. and John Tominelli's "Motion to Dismiss for Lack of Personal Jurisdiction" (Docket No. 50) is **GRANTED**.

**IT IS FURTHER ORDERED** that any and all claims against Defendant Southeastern Cargo Services, Inc. and Defendant John Tominelli are **DISMISSED**.