Alberto T. REYES, Appellant,

v.

MARINE DRILLING COMPANIES, INC.,
Marine Drilling Management Company,
Samedan Oil Corporation, M/V Enter-
prise Limited Partnership, Keyes Off-
shore Limited Partnership D/B/A Keyes
Drilling Limited Partnership And In-
galls Shipbuilding, Inc., Appellees.

No. 14–95–01420–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Jan. 16, 1997.

Rehearing Overruled March 6, 1997.

Douglas J. Sutter, Houston, for appellant.

Bruch H. Golden, Rodney E. Alexander, Houston, for appellees.

Before LEE, AMIDEI and EDELMAN, JJ.

## OPINION

AMIDEI, Justice.

Alberto T. Reyes appeals from a judgment of dismissal. Alleging Ingalls Shipbuilding, Inc. (Ingalls) was negligent in designing a portion of a drilling rig, appellant sued Ingalls for personal injuries sustained while working at the rig. Ingalls, a Delaware corporation, entered a special appearance pursuant to rule 120a, Texas Rules of Civil Proce-

dure. It also filed a motion claiming to be a nonresident and objecting to the trial court's exercise of personal jurisdiction over it. The trial court sustained Ingalls's special appearance for lack of personal jurisdiction, dismissed the case as to Ingalls and severed the cause of action. In one point of error, appellant contends the trial court erred in sustaining the special appearance because the evidence was sufficient to establish the court's personal jurisdiction over Ingalls. We affirm.

While shoveling heavy loads of mud drilled from the ocean floor, appellant was injured on an Ingall's designed rig at some unknown location. Appellant alleged the manual shoveling that proximately caused his injury would not have occurred if Ingall's design had included a "gumbo buster" or some other appropriate device been installed on the mud flow line.

In support of its special appearance and objection to the jurisdiction of the trial court, Ingalls attached the affidavit of Dennis F. Knecht, a vice president of Ingalls, stating that (1) Ingalls is a Delaware corporation with its principal place of business in Pascagoula, Mississippi; (2) Ingalls has never performed shipbuilding or manufacturing activities in Texas; (3) Ingalls has no office or place of business in Texas; (4) Ingalls has no officers, agents, employees, representatives, or directors in Texas; (5) Ingalls does not own or lease any real estate in business Texas; (6) Ingalls does not maintain any bank accounts in Texas; (7) Ingalls does not distribute or market its products in Texas; (8) Ingalls has never been registered or licensed to do business in Texas, has never paid taxes in Texas and, does not maintain an agent for service of process in Texas; (9) all contracts with residents of Texas are executed by Ingalls in Mississippi, are performable in Mississippi and provide for the application of Mississippi law; (10) employees of Ingalls occasionally travel to Texas to perform quality assurance inspections which are necessitated by Ingalls's contractual obligations with the federal government; (11) Ingalls has advertised for employees in Texas to work in Mississippi; (12) the rig complained of by appellant was manufactured by Ingalls in

1980 in Mississippi pursuant to a contract with Keyes Offshore, Inc., and delivered to Keyes Offshores, Inc., in Mississippi, and Ingalls had no control of the rig after delivery to Keyes Offshore, Inc. Ingalls stipulated to facts for purposes of the special appearance in the trial court, to wit: (1) Since 1987, Ingalls has purchased goods in excess of $183,000,000.00 in Texas from at least 471 persons and/or companies in Texas; (2) Ingalls has purchased $63,368,770.38 in products from Stewart & Stevenson Services, Inc., in Houston since 1987, and has entered into contracts with them for equipment purchases and repairs; (3) Ingalls as purchaser has entered into 303 contracts and/or agreements with Crane Defense Elevator of Conroe, Texas, since 1987; (4) Ingalls advertised in five periodicals in Texas for employees since 1987; (5) since 1990, Ingalls sold $851,511.88 worth of scrap metal to Texas companies and all of the scrap metal was delivered at Pascagoula, Mississippi; (6) Ingalls has sent representatives to Texas on at least 204 occasions to inspect financial data and facilities of potential vendors and/or review equipment and material being sold to Ingalls.

Appellant argues that the facts stated in Mr. Knecht's affidavit and the facts stipulated by Ingalls are sufficient to show Ingalls' "substantial, continuous and systematic contacts" with Texas and allow the court to assert its general jurisdiction over Ingalls. We disagree.

On appeal, the court looks to all the evidence in the record to determine whether defendant negated all bases of personal jurisdiction that the plaintiff alleged. *Scott v. Huey L. Cheramie, Inc.,* 833 S.W.2d 240, 241 (Tex.App.—Houston [14th Dist.] 1992, no writ). The nonresident defendant has the burden of proof to negate all bases of personal jurisdiction. *Kawasaki Steel Corp. v. Middleton,* 699 S.W.2d 199, 203 (Tex.1985).

In *CSR Ltd. v. Link,* 925 S.W.2d 591, 595 (Tex.1996), the supreme court reviewed the established law with respect to acquiring personal jurisdiction over a nonresident defendant and stated, in pertinent part:

A defendant's contacts with a forum can give rise to either general or specific jurisdiction. General jurisdiction is present when a defendant's contacts are continuous and systematic, permitting the forum to exercise personal jurisdiction over the defendant even if the cause of action did not arise from or relate to activities conducted within the forum state. *See Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990). General jurisdiction requires a showing that the defendant conducted *substantial* activities within the forum, a more demanding minimum contacts analysis than for specific jurisdiction. (citation omitted). In contrast, specific jurisdiction is established if the defendant's alleged liability arises from or is related to an activity conducted within the forum (citation omitted) (emphasis added).

*Id.* at 595.

The Texas long-arm statute authorizes the exercise of jurisdiction over nonresidents "doing business" in Texas. TEX. CIV. PRAC. & REM.CODE ANN. § 17.042 (Vernon 1986). Section 17.042 provides:

In addition to other acts that may constitute doing business, a nonresident does business in this state if the nonresident:

(1) contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state;

(2) commits a tort in whole or in part in this state; or

(3) recruits Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state.

The broad language of the long-arm statute's doing business requirement permits the statute to reach as far as the federal constitutional requirements of due process will allow. *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex.1990); *U–Anchor Advertising, Inc. v. Burt,* 553 S.W.2d 760, 762 (Tex.1977). As a result, we consider only whether it is consistent with federal constitutional requirements of due process for Texas courts to assert *in personam* jurisdiction over Ingalls. *See Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 412–14, 104 S.Ct. 1868, 1871–72, 80 L.Ed.2d 404, 410–

11 (1984); *Guardian Royal Exch. v. English China,* 815 S.W.2d 223, 226 (Tex.1991).

Federal constitutional requirements of due process limit the power of the state to assert personal jurisdiction over a nonresident defendant. *Helicopteros,* 466 U.S. at 413–14, 104 S.Ct. at 1872. The United States Supreme Court divides due process requirements into two parts: (1) whether the nonresident defendant has purposely established "minimum contacts" with the forum state; and (2) if so, whether the exercise of jurisdiction comports with "fair play and substantial justice." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475–76, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528, 542–43 (1985). *See Helicopteros,* 466 U.S. at 414, 104 S.Ct. at 1872; *Guardian Royal Exch.,* 815 S.W.2d at 226.

■ Under the *minimum contacts* analysis, we must determine whether the nonresident defendant has purposefully availed itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its law. *Burger King,* 471 U.S. at 474–75, 105 S.Ct. at 2183; *Guardian Royal Exch.,* 815 S.W.2d at 226. This "purposeful availment" requirement ensures that a nonresident defendant will not be haled into a jurisdiction based solely upon "random," "fortuitous" or "attenuated" contacts or the "unilateral activity of another party or a third person." *Guardian Royal Exch.,* 815 S.W.2d at 226. Furthermore, individuals must have fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign. *Id.*

■ The exercise of personal jurisdiction is proper when the contacts proximately result from actions of the nonresident defendant which create a substantial connection with the forum state. *Id.* The substantial connection between the nonresident defendant and the forum state necessary for a finding of minimum contacts must come about by *action or conduct of the nonresident* defendant purposefully directed toward the forum state. *Id.* However, "the constitutional touchstone remains whether the [nonresident] defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 226–27.

Ingalls has *no* business offices in Texas, has *no* registered agent for service in Texas, owns *no* real estate nor pays taxes in Texas, has *never* been licensed to do business in Texas, does *not* maintain any bank accounts in Texas, and does *not* distribute or market its products in Texas. Ingalls sent representatives to companies in Texas when visits were necessitated by contractual obligations to the federal government. Ingalls made numerous purchases of equipment in Texas from various suppliers. In *Helicopteros,* 466 U.S. at 417, 104 S.Ct. at 1874, the Supreme Court held [citing *Rosenberg Bros. & Co. v. Curtis Brown Co.,* 260 U.S. 516, 43 S.Ct. 170, 67 L.Ed. 372 (1923) ] "that mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of *in personam* jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." The court found in *Helicopteros,* under facts similar to those in this case, that the nonresident's contacts with Texas were insufficient to satisfy the requirements of the Due Process Clause of the Fourteenth Amendment. After a review of the evidence we fail to find Ingalls had sufficient "minimum contacts" to create a substantial connection with Texas. *Guardian Royal Exch.,* 815 S.W.2d at 226.

■ Appellant further argues that Ingalls was subject to the court's jurisdiction because it recruited employees in Texas by advertising in five periodicals. Appellant claims this activity constitutes "doing business" under section 17.042 of the Texas Civil Practices and Remedies Code. Soliciting employees to work in Mississippi is an "isolated or disjointed" activity and could invoke specific jurisdiction *if* appellant's cause of action arose out of this particular activity. *Schlobohm,* 784 S.W.2d at 357. Appellant is *not* employed by Ingalls and there is *no* evidence that appellant's cause of action arose out of Ingalls' advertising. The Eleventh Circuit found that advertising employment opportunities in an Alabama newspaper, for employment outside of the state, did not constitute "purposeful availment of the benefit and protections of Alabama laws." *Johnston v. Frank E. Basil, Inc.,* 802 F.2d 418, 420 (11th Cir.1986). In *Johnston,* the nonresident em-

ployer did not reside in nor did business in Alabama, had no bank accounts in Alabama, had no customers in Alabama, and did not own or lease any real property in Alabama. Further, the employment contracts were not executed in Alabama and were governed by the law of Saudi Arabia, the place of employment. *Id.* We find mere advertising of employment opportunities in five Texas periodicals does not constitute purposeful availment of the benefit and protections of Texas laws. Ingalls had no "minimum contacts" with Texas sufficient to invoke the general jurisdiction of Texas courts. *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. at 2183.

Isolated sales of scrap metal to Texas residents in which delivery was to take place in Mississippi are insufficient to invoke the general jurisdiction of Texas courts. These isolated sales do not constitute "purposeful availment" of the benefits and protection of Texas laws that would establish "minimum contacts" sufficient to invoke general jurisdiction over Ingalls. *Burger King Corp.,* 471 U.S. at 475, 105 S.Ct. at 2183. We overrule appellant's claim of jurisdiction under this argument.

Finally, appellant argues that the United States District Court for the Southern District of Texas, Houston Division, found Ingalls was subject to the jurisdiction of Texas in *International Switchboard Corporation v. Ingalls Shipbuilding, Inc.,* Civil Action No. H–93–3559, slip op. at 8 (U.S. Dist. Ct. S.D. Tex., Houston Div., May 16, 1994, Harmon, J.) (not designated for publication). He contends this order establishes general jurisdiction over Ingalls in Texas courts. We disagree.

The order in *International Switchboard Corporation,* No. H–93–3559, applies only to the parties in that case; the court found, under the facts of that case, that it had *specific* jurisdiction over Ingalls because the claims arose out of its contract activities with the plaintiff. *Id.* at 8. Appellant's argument that the federal district court order is somehow binding on the issue of general jurisdiction in this case is without merit and is overruled.

As there were no minimum contacts, we need not review the evidence to determine whether the assertion of jurisdiction comports with the notions of fair play and substantial justice. *See Burger King Corp.,* 471 U.S. at 475–76, 105 S.Ct. at 2183–84.

Appellant established no facts to support his allegations that the negligence occurred in Texas. Appellant's pleadings indicate only that appellant was injured while shoveling mud on an Ingalls' designed rig at some unknown location. Appellant has the initial burden of pleading sufficient allegations to bring Ingalls within the provisions of the long arm statute. *Hotel Partners v. KPMG Peat Marwick,* 847 S.W.2d 630, 633 (Tex.App.—Dallas 1993, writ denied). If the plaintiff does not establish jurisdiction by pleading the defendant committed an actionable act in Texas, the defendant may negate all potential bases of jurisdiction merely by presenting evidence it is a nonresident. *Id.* at 634. Ingalls disproved specific jurisdiction with the admission of the Knecht affidavit that averred Ingalls was a foreign corporation and that no conduct of Ingalls in this case took place in Texas. *Id.* at 634. We find Ingalls had no minimum contacts with Texas sufficient to invoke the general jurisdiction of Texas and further find appellant alleged no jurisdictional facts to show specific jurisdiction. Accordingly, we overrule appellant's point of error one and affirm the judgment of the trial court.