George CASAS;  aka Jorge, Plaintiff,

v.

**NORTHROP GRUMMAN SHIP SYSTEMS, INC., et al.,**
Defendants.

**Civil No. M–07–64.**

United States District Court,
S.D. Texas,
McAllen Division.

Jan. 7, 2008.

David N. Calvillo, Calvillo Law Firm, McAllen, TX, Jason Aron Itkin, Micajah

Boatright Arnold & Itkin LLP, Houston, TX, for Plaintiff.

William Stephen Benesh, Bracewell and Giuliani LLP, Austin, TX, Ronald L. White, White Mackillop et al., Houston, TX, for Defendants.

### ORDER GRANTING DEFENDANT NORTHROP GRUMMAN SHIP SYSTEMS, INC.'S MOTION TO DISMISS AND GRANTING DEFENDANT US JOINER LLC'S MOTION TO DISMISS

RANDY CRANE, District Judge.

## I. Introduction

Now before the Court are Defendant Northrop Grumman Ship Systems, Inc.'s and Defendant US Joiner LLC's Motions to Dismiss for Lack of Personal Jurisdiction. (Docs. 3, 4). Plaintiff George (aka Jorge) Casas originally filed suit on January 9, 2007 in the 139th District Court, Hidalgo County, Texas. (Doc. 1). Plaintiff's Original Petition asserts claims against Defendants Northrop Grumman and US Joiner for negligence and unseaworthiness pursuant to the Jones Act and the general maritime law of the United States. *Id.* These claims arise out of injuries Plaintiff allegedly sustained on or about August 15, 2005 while aboard a "vessel" of Defendant Northrop Grumman. *Id.*

Defendants removed the case to this Court on March 23, 2007 on the grounds that the Court has diversity jurisdiction over the action. (Doc. 1).[1] Defendants contended that Plaintiff fraudulently pled his Jones Act claim and thus could not

---

1. Pursuant to 28 U.S.C. § 1332, a federal court has jurisdiction over a civil action where the amount in controversy exceeds $75,000, exclusive of interest and costs, and the action is between parties of different states. As noted in its Order Denying Plain-

tiff's Motion to Remand, Plaintiff and Defendants do not dispute that the amount in controversy exceeds the jurisdictional minimum. (Docs. 1, 9, 20). In addition, the parties do not dispute that Plaintiff, a citizen of Texas, is diverse in citizenship from Defendants. *Id.*

avoid removal on such basis. *Id.; see Holmes v. Atlantic Sounding Co., Inc.*, 437 F.3d 441, 445 (5th Cir.2006)(although Jones Act cases generally not removable from state court, fraudulently pleaded Jones Act claim does not bar removal). On September 10, 2007, the Court denied Plaintiff's Motion to Remand. (Doc. 20). The Court found that Plaintiff could not possibly establish that the unfinished ship upon which he was working when the alleged incident occurred was a "vessel" as that term has been defined by law, nor could he show that he was assigned to an "identifiable group of vessels." *Id.* Therefore, Plaintiff could not establish his status as a "seaman" under the Jones Act, and thus his Jones Act claim was fraudulently pled. *Id.; see Chandris, Inc. v. Latsis*, 515 U.S. 347, 368, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995)(Jones Act "seaman" "must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature").

Defendants Northrop Grumman and US Joiner, both nonresident defendants, now request the dismissal of Plaintiff's case pursuant to Federal Rule of Civil Procedure 12(b)(2) on the grounds that this Court does not have personal jurisdiction over Defendants. (Docs. 3, 4). As Plaintiff in fact concedes that the Court does not have specific jurisdiction over these Defendants, the Court will herein consider whether Plaintiffs have shown that Defendants' contacts with the forum are sufficient to confer general jurisdiction. (Docs. 23, 24).

## II. Analysis

### A. Overview of Personal Jurisdiction

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the district court's jurisdiction over the defendant. *E.g., Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir.), *cert. denied*, 513 U.S. 930, 115 S.Ct. 322, 130 L.Ed.2d 282 (1994). Where, as here, the district court rules on the motion to dismiss without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper. *Id.* The district court may determine the jurisdictional issue by considering affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery. *See id.; Allred v. Moore & Peterson*, 117 F.3d 278, 281 (5th Cir.1997). The court must accept the uncontroverted allegations in the complaint as true and resolve any factual conflicts in favor of the plaintiff in determining whether the plaintiff has established a *prima facie* case for personal jurisdiction. *Wilson*, 20 F.3d at 648.

In a diversity case, "a federal court has personal jurisdiction over a nonresident defendant to the same extent that a state court in that forum has such jurisdiction." *See, e.g., id.* at 646. Under the Texas long-arm statute, a Texas court has personal jurisdiction over a nonresident defendant "doing business" in Texas. *Id.* at 647 n. 1; Tex. Civ. Prac. & Rem.Code § 17.042 (Vernon 2007). The only limitations placed on Texas courts in asserting personal jurisdiction over nonresident defendants are those imposed by the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 412–13, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir.2003); *Guardian Royal Exchange Assur., Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *Schlobohm v. Schapiro*, 784 S.W.2d 355, 356–57 (Tex.1990). Under the due process standard, a court can constitutionally exercise personal jurisdiction over a nonresident defendant if (1) the defendant

has "minimum contacts" with the forum state; and (2) the exercise of such jurisdiction "does not offend traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)(internal quotations omitted); *Freudensprung v. Offshore Technical Servs., Inc.,* 379 F.3d 327, 343 (5th Cir.2004); *Am. Type Culture Collection, Inc. v. Coleman,* 83 S.W.3d 801, 806 (Tex.2002).

"[M]inimum contacts must have a basis in 'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Asahi Metal Indus. Co., Ltd. v. Superior Court of CA, Solano County,* 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)(quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)); *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370 (5th Cir.1987); *Michiana Easy Livin' Country, Inc. v. Holten,* 168 S.W.3d 777, 784 (Tex. 2005). In other words, the defendant's connection with the forum state should be such that he should "reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Revell v. Lidov,* 317 F.3d 467, 475 (5th Cir.2002); *Am. Type Culture Collection,* 83 S.W.3d at 806. The "purposeful availment" requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King,* 471 U.S. at 475, 105 S.Ct. 2174 (internal citations omitted); *Stuart v. Spademan,* 772 F.2d 1185, 1191 (5th Cir.1985); *Michiana Easy Livin' Country,* 168 S.W.3d at 785. In addition,

it allows a defendant to structure its transactions so as to avoid being haled into court in a particular state. *Stuart,* 772 F.2d at 1190 (citing *World–Wide Volkswagen,* 444 U.S. at 297, 100 S.Ct. 559); *Michiana Easy Livin' Country,* 168 S.W.3d at 785.

"Minimum contacts" may be divided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Helicopteros,* 466 U.S. at 413–15, 104 S.Ct. 1868; *Freudensprung,* 379 F.3d at 343; *Am. Type Culture Collection,* 83 S.W.3d at 806. A court may exercise specific jurisdiction when the nonresident defendant has " 'purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities.'" *Cent. Freight Lines,* 322 F.3d at 381; *see also Am. Type Culture Collection,* 83 S.W.3d at 806; *Guardian Royal,* 815 S.W.2d at 228.[2] General jurisdiction allows a court to exercise jurisdiction over a nonresident defendant if the defendant's contacts with the forum are "substantial" and "continuous and systematic" but unrelated to the instant cause of action. *See Helicopteros,* 466 U.S. at 416, 104 S.Ct. 1868; *Cent. Freight Lines,* 322 F.3d at 381; *Am. Type Culture Collection,* 83 S.W.3d at 806–07; *Guardian Royal,* 815 S.W.2d at 228. Where general jurisdiction, as opposed to specific jurisdiction, is concerned, a court's minimum contacts inquiry is broader and more demanding. *Gardemal v. Westin Hotel Co.,* 186 F.3d 588, 595 (5th Cir.1999); *Am. Type Culture Collection,* 83 S.W.3d at 807; *Guardian Royal,* 815 S.W.2d at 228. "[A] court should focus its analysis on the sum total of the defendant's contacts with the forum state to determine whether the defendant

---

**2.** As noted, Plaintiff concedes that the Court does not have specific jurisdiction over Defendants. (Docs. 23, 24).

has established a general presence in the state." *Gulf Consol. Servs., Inc. v. Corinth Pipeworks, S.A.*, 898 F.2d 1071, 1080 (5th Cir.1990). However, the "quality and nature" of these contacts, rather than their number, are important in determining whether the defendant has minimum contacts with the forum state. *Thompson v. Chrysler Motors Corp.*, 755 F.2d 1162, 1170 (5th Cir.1985); *Am. Type Culture Collection*, 83 S.W.3d at 806; *Guardian Royal*, 815 S.W.2d at 230 n. 11.

## B. Factual Background

Plaintiff alleges that he sustained injuries, as a result of Defendants' negligence, on or about August 15, 2005 while aboard a "vessel" of Defendant Northrop Grumman. (Doc. 1). Defendants have submitted evidence, undisputed by Plaintiff, that the "vessel" at issue is the LPD–19, a ship under construction. (Doc. 3, Exs. A, B; Doc. 4, Ex. 1). In 2000, the U.S. Navy awarded the contract for the construction of the LPD–19 to Northrop Grumman's predecessor, Ingalls Shipbuilding, Inc. *Id.* Construction of the LPD–19 began in 2002 at the Ingalls–Pascagoula shipyard in Pascagoula, Mississippi and has continued at this location until the present time. (Doc. 3, Exs. A, B; Doc. 4, Ex. 1). US Joiner, which was retained by Northrop Grumman to perform the installation of interior spaces on the LPD–19, subcontracted with Land Coast Insulation, Inc. ("Land Coast") for the insulation of the LPD–19's interior. (Doc. 3, Ex. A; Doc. 4, Ex. 1). The alleged August 15, 2005 incident leading to Plaintiff's injuries occurred while he was working for Land Coast inside the LPD–19. (Doc. 3, Ex. B; Doc. 4, Ex. 1).

## C. Defendant Northrop Grumman's Motion to Dismiss

■ Defendant Northrop Grumman moves for dismissal on the grounds that it does not have continuous, systematic, or substantial contacts with Texas sufficient to give rise to general jurisdiction. (Doc. 3). In support of this contention, Northrop Grumman has attached the affidavit of Richard Schenk, current Vice President of Supply Chain Management for Northrop Grumman. (Doc. 3, Ex. A). Mr. Schenk attests that Northrop Grumman (1) is not incorporated in Texas and does not maintain its principal place of business in Texas; (2) does not engage in shipbuilding or manufacturing in Texas; (3) has not erected, sold, or purchased a vessel in Texas for at least the past 20 years; (4) has no officers or directors in Texas; (5) does not have an agent for service of process in Texas; (6) does not distribute or market its products in Texas; (7) does not own or lease any real estate in Texas; (8) does not maintain any bank accounts in Texas; and (9) has never been registered or licensed to do business in Texas. *Id.* Mr. Schenk also states that Northrop Grumman executes all contracts with residents of Texas and other states in Mississippi and provides for the application of Mississippi law in its contract terms and conditions. *Id.*

Plaintiff's Original Petition alleges, without more, that Defendant Northrop Grumman "does a substantial amount of business in Texas." (Doc. 1). In an effort to establish a *prima facie* case of general jurisdiction over Northrop Grumman, Plaintiff has submitted excerpts from the October 15, 2007 deposition testimony of Mr. Schenk. (Doc. 24, Ex. A). According to Plaintiff, Mr. Schenk's testimony reveals that the Court's exercise of general jurisdiction over Northrop Grumman is proper for the following reasons: (1) Northrop Grumman procured $35 to $40 million worth of materials from Texas companies over a period of 18 months and entered into contracts, the total value of which approximated $130 million, with an estimate of 140 individuals or companies located in Texas between 2006 and 2007;

(2) Northrop Grumman advertised and recruited workers in Texas; and (3) Northrop Grumman transacts business with Northrop Grumman Information Technology, Inc. ("Northrop Grumman IT"), a Virginia-based subsidiary of Northrop Grumman which has an office in Dallas, Texas and employs 30 individuals at the Pascagoula, Mississippi facility. (Doc. 24 (citing Doc. 24, Ex. A)). Northrop Grumman does not contest these facts other than to point out that Mr. Schenk identified only one advertising effort in Texas undertaken by Northrop Grumman in November 2005 for the purpose of replenishing its workforce after Hurricane Katrina. (Doc. 26).

As Northrop Grumman notes, the Supreme Court in *Helicopteros, supra,* explained that "mere purchases, even if occurring at regular intervals, are not enough to warrant a State's assertion of in personam jurisdiction over a nonresident corporation in a cause of action not related to those purchase transactions." *Helicopteros,* 466 U.S. at 418, 104 S.Ct. 1868. In that case, the Court refused to uphold the exercise of general jurisdiction over a foreign corporation whose contacts with Texas consisted of negotiating a contract in Texas; accepting checks drawn on a Texas bank; purchasing helicopters, equipment, and training services from Texas "for substantial sums"; and sending its employees to Texas for training, finding that these contacts were insufficiently "continuous and systematic." *Id.* at 416–18, 104 S.Ct. 1868. The Fifth Circuit has also declined to find general jurisdiction over nonresident defendants who regularly contract with residents of the forum state,

even where those contracts involve large sums. Most recently, in *Central Freight Lines, supra,* the court found that it did not have general jurisdiction over a nonresident corporate defendant who "routinely arranges and receives interline shipments to and from Texas and apparently sends sales people to the state on a regular basis to develop business, negotiate contracts, and service national accounts" but "never actually operated any trucks or picked up or delivered any freight in Texas." *Cent. Freight Lines,* 322 F.3d at 381.[3] In other words, the defendant was not doing business *in* Texas sufficient to confer general jurisdiction. *See id.; see also Revell,* 317 F.3d at 471. The court of appeals explained that, even if the defendant's contacts with Texas were "continuous and systematic" in some sense, they were not "substantial" enough to subject the defendant to suit in that forum. *Id.* (citing *Wilson,* 20 F.3d at 649–51). In *Dalton v. R & W Marine, Inc.,* 897 F.2d 1359, 1362 (5th Cir.1990), the Fifth Circuit held that a corporate defendant in fact lacked continuous and systematic contacts with the forum state where it entered into charters with its local subsidiaries that yielded some 12.9% of its total revenue; engaged in advertising that reached the forum state; and purchased vessels at marshals' sales within the state.[4] With respect to the charter agreements, the court noted that the defendant "takes care that these charters are entered into, and payments made pursuant to them are remitted," outside the forum state. *Id.* Therefore, the corporation's " 'obvious intent to exercise its due process rights'

---

3. The Fifth Circuit also noted that the defendant had federal operating authority in Texas but was not registered to do business in the state, did not maintain a business office or records in the state, and did not pay franchise taxes in the state. *Cent. Freight Lines,* 322 F.3d at 381.

4. The defendant had no employees, offices, or property in the forum state. *Dalton,* 897 F.2d at 1361. In addition, it did no business there and was not authorized to do so. *Id.*

should not be disregarded lightly." *Id.* (quoting *Bearry,* 818 F.2d at 376). In so finding, the court relied on its decision in *Bearry,* in which it declined to find general jurisdiction over a corporate defendant that sold millions of dollars of its manufactured products to Texas dealers over a five-year period and purchased over $195 million of goods and services from Texas vendors pursuant to agreements carefully negotiated, completed, and performed outside the forum state. *Bearry,* 818 F.2d at 372–73, 375. The court found that the defendant had "exercised its right to structure its affairs in a manner calculated to shield it from the general jurisdiction of the courts of other states such as Texas." *Id.* at 375. As Plaintiff does not contest Mr. Schenk's sworn statement that Northrop Grumman's purchases from Texas vendors are governed by contracts executed *in* Mississippi that provide for the application of Mississippi law, the Court cannot exercise general jurisdiction on the basis of such purchases, regardless of their frequency or the amounts involved.

The Fifth Circuit's decisions in *Dalton* and *Bearry* further indicate that a corporate defendant's nationwide advertising efforts that reach the forum state do not support a finding of general jurisdiction. *Dalton,* 897 F.2d at 1362 n. 3; *Bearry,* 818 F.2d at 376. Mr. Schenk testified only that, in November 2005, Northrop Grumman advertised in Texas for workers to replenish those who had left its facility in the aftermath of Hurricane Katrina. (Doc. 24, Ex. A at p. 23). To the Court's knowledge, he did not indicate whether Northrop Grumman advertised nationally, or solely in Texas. Regardless, the Court cannot find that a single recruitment effort spurred by a natural disaster evinces continuous, systematic, or substantial contacts with Texas sufficient to establish general jurisdiction.

Finally, the Fifth Circuit has established that a parent corporation " 'is not subject to the jurisdiction of a forum state merely because its subsidiary is present or doing business there.' " *Alpine View Co. Ltd. v. Atlas Copco AB,* 205 F.3d 208, 218 (5th Cir.2000)(quoting *Hargrave v. Fibreboard Corp.,* 710 F.2d 1154, 1159 (5th Cir.1983)); *see also Dalton,* 897 F.2d at 1363. The plaintiff must make a *prima facie* showing that the parent so controls the subsidiary that the activities of the subsidiary may be fairly attributed to the parent for the purpose of asserting jurisdiction over it. *Alpine,* 205 F.3d at 218; *Dalton,* 897 F.2d at 1363 (there may be instances in which parent so dominates subsidiary that they do not in reality constitute separate and distinct corporate entities). In other words, the plaintiff must show that the parent is the "alter ego" of the subsidiary. *See id.* Mr. Schenk admitted during his deposition that Northrop Grumman IT, an apparent subsidiary of Northrop Grumman, has an office in Dallas, Texas and employees at the Pascagoula, Mississippi facility. (Doc. 26, Ex. A at pp. 30, 35). He responded in the affirmative when asked whether Northrop Grumman had "done work" with Northrop Grumman IT but testified that, to his knowledge, none of this work had occurred in Texas. (Doc. 26, Ex. A at p. 30). In fact, the deposition transcript provides no indication of the nature of the work shared by the two entities, nor does it in any way establish that Northrop Grumman exercises control over its subsidiary to the requisite degree. As such, Plaintiff has failed to establish that Northrop Grumman is the alter ego of its subsidiary such that its subsidiary's contacts with Texas, if sufficient to confer general jurisdiction over Northrop Grumman IT, may be imputed to Northrop Grumman.

As support for its contention that the Texas contacts identified by Plaintiff are

sufficient to demonstrate general jurisdiction over Northrop Grumman, Plaintiff relies solely on one unpublished district court case, *Elliot v. Firearms Training Sys., Inc.*, 2004 WL 2567619 (W.D.Tex. 2004). (Doc. 24). This case is distinguishable from the present one, in that the nonresident defendant in *Elliot* was allegedly present *in* Texas to a greater degree. *See Elliot*, 2004 WL 2567619, at *3.[5] In addition, the district court in *Elliot* made no mention of any allegation or evidence that the defendant had structured its transactions with Texas in a manner calculated to shield it from the general jurisdiction of Texas. *See id.* Moreover, the court made no finding that the alleged contacts were in fact "substantial." *See id.*

Although *Elliot* does nothing to persuade this Court to reconsider its determination that Northrop Grumman's contacts with Texas do not support a finding of general jurisdiction, a case cited by Northrop Grumman in fact cements that determination. In *Reyes v. Marine Drilling Companies, Inc.*, 944 S.W.2d 401 (Tex.App.Houston [14th Dist.] 1997, no writ), the appellate court found that Northrop Grumman's predecessor, Ingalls Shipbuilding, Inc. ("Ingalls"), had insufficient contacts with Texas in a case factually similar to the present one. The plaintiff in *Reyes* filed suit in Texas state court, alleging that Ingalls had been negligent in designing a portion of a drilling rig on which he was injured while shoveling mud. *Reyes*, 944 S.W.2d at 402. Ingalls entered a special appearance and objected to the trial court's exercise of personal jurisdiction over it. *Id.*[6] For purposes of the special appearance, Ingalls stipulated that it had (1) regularly contracted with Texas vendors for large amounts since 1987; (2) advertised for employees in five periodicals in Texas since that time; (3) sold scrap metal to Texas companies, delivered at Pascagoula, Mississippi, since 1990; and (4) sent representatives to Texas on at least 204 occasions to inspect financial data and facilities of potential vendors and/or review equipment and material being sold to Ingalls. *Id.* at 403. Based on these facts, the appellate court affirmed the trial court's finding that it lacked personal jurisdiction over Ingalls. *See generally id.* More specifically, the court reasoned that even Ingalls's "numerous purchases of equipment in Texas from various suppliers" failed to show a "substantial connection" with Texas. *Id.* The court also explained that "mere advertising of employees in five Texas periodicals" and "isolated sales" of scrap metal do not constitute purposeful availment of the benefit and protections of Texas laws that would establish minimum contacts sufficient to invoke general jurisdiction over Ingalls. *Id.* at 405. In sum, the decision in *Reyes* provides further confirmation that Plaintiff has

5. More specifically, the individual plaintiff argued that general jurisdiction over the defendant corporation was appropriate for the following reasons: (1) the defendant had contracts with and provided products and training to police departments in Texas; (2) the defendant asked the plaintiff to visit Texas to meet with representatives of the Federal Air Marshal Service to discuss developing a regional training center; (3) the defendant hired an employee who relocated to Texas so that the defendant would have a sales representative in the Texas region; (4) the defendant exchanged phone calls, e-mails, and correspondence with individuals in Texas; and (5) a Texas consumer could access the defendant's products and services on-line at the defendant's website. *Elliot*, 2004 WL 2567619, at *3.

6. In support of its special appearance, Ingalls submitted an affidavit that closely tracks Mr. Schenk's sworn statement in the present case. *See Reyes*, 944 S.W.2d at 402–03, (Doc. 3, Ex. A).

failed to make a *prima facie* showing of personal jurisdiction over Defendant Northrop Grumman. None of the contacts identified by Plaintiff, either alone or in concert, are sufficiently continuous, systematic, and substantial so to confer general jurisdiction over this Defendant.

## D. Defendant US Joiner LLC's Motion to Dismiss

■ Defendant US Joiner also moves to dismiss on the grounds that it does not have sufficient minimum contacts with Texas to invoke this Court's general jurisdiction. (Doc. 4). In support of this position, US Joiner has attached the affidavit of David Madigan, its Vice President and Chief Financial Officer. (Doc. 4, Ex. 1). Mr. Madigan attests that US Joiner (1) has no registered or other corporate agents in Texas; (2) has no employees in Texas, nor did it at the time of the alleged incident involving Plaintiff; (3) has never maintained a corporate office, business address, or telephone number in Texas; (4) does not own or lease any real estate in Texas; (5) does not engage in manufacturing or fabrication activities in Texas; (6) does not market its services in Texas; and (7) does not maintain any bank accounts in Texas. *Id.*

Plaintiff points out that Mr. Madigan also states in his affidavit, and testified at his deposition, that US Joiner's transactions with Texas vendors account for two and a half percent of its total dollar outlays since the inception of the company in January 2004. (Doc. 4, Ex. 1; Doc. 24, Ex. A at p. 14). In addition, he attested that in 2004 and 2005, US Joiner contracted with Signal International, Inc., a Texas-based steel erection subcontractor, for the fabrication of steel modules at Signal's marine fabrication yard in Port Arthur, Texas. (Doc. 4, Ex. 1; Doc. 23, Ex. A at p. 35). This work was done in connection with the LPD–17 and LPD–18, both part of a larger LPD contract being performed for the U.S. Navy. (Doc. 23, Ex. A at p. 35). As part of this project, US Joiner sent several of its employees to Texas to monitor and oversee the work being performed. (Doc. 23, Ex. A at p. 37).

US Joiner does not dispute the existence of these contacts with Texas; in fact, Mr. Madigan described them in more detail in his affidavit filed prior to the taking of his deposition. (Doc. 28). In other words, it appears that Mr. Madigan's deposition elicited little or no new information of aid to Plaintiff in his attempt to show sufficient minimum contacts between US Joiner and the forum state. With regard to US Joiner's purchases from Texas vendors, Mr. Madigan attests as follows:

10. "Although there have been other incidental contacts with Texas-based entities over the years [aside from US Joiner's contacts with Signal], these are primarily in the realm of purchases of relatively minor quantities of materials and the like. All financial transactions directed to or from Texas total somewhere in the range of two and one half percent of US Joiner's total dollar outlays since the inception of the company in January 2004. Any purchase orders for materials are subject to US Joiner's standard terms and conditions, and specify the application of Virginia law."

(Doc. 4, Ex. 1).

As explained *supra*, a nonresident defendant's mere purchases from a forum state, regardless of their frequency or the amounts involved, do not constitute continuous, systematic, and substantial contacts with the forum. Given the absence of allegations or evidence of US Joiner's presence *in* Texas in connection with these purchases, the Court cannot exercise gen-

eral jurisdiction over Northrop Grumman on this basis.

Turning to US Joiner's relationship with Signal, the Court notes that such relationship also fails to evince sufficient contacts with the forum state. Mr. Madigan states in his affidavit that in 2004 and 2005, Signal was fabricating steel modules at its facility in Texas for its general contractor on two shipbuilding projects based in Louisiana. (Doc. 4, Ex. 1). US Joiner was a subcontractor on both projects, working for the same general contractor. *Id.* US Joiner's work on the projects called for the eventual installation of a "curtain plate" into the steel modules. *Id.* Mr. Madigan states in his affidavit, and testified in his deposition, that US Joiner contracted to install the curtain plate in the Louisiana shipyard after the partially completed steel modules were delivered there. (Doc. 4, Ex. 1; Doc. 28, Ex. 1 at p. 36). However, in June 2004 Signal offered to install the curtain plate into the modules while the modules were being constructed at Signal's Texas facility. (Doc. 4, Ex. 1; Doc. 28, Ex. 1 at pp. 36–37). Signal and US Joiner then executed a purchase order agreement on June 29, 2004 for Signal's installation of the curtain plate that incorporated US Joiner's standard terms and conditions and provided for the application of Virginia law. (Doc. 4, Ex. 1; Doc. 28, Ex. 1 at p. 37). Pursuant to this agreement, US Joiner shipped the necessary steel components for the curtain plate to Signal in Texas and sent five US Joiner employees to Signal's Texas facility to monitor and oversee the installation, for which US Joiner was ultimately responsible. (Doc. 4, Ex. 1; Doc. 28, Ex. 1 at pp. 37–38). The employees alternated visiting Texas until June 2005. *Id.*

Given these uncontested facts, the Court finds that US Joiner's presence in Texas in connection with the installation of the curtain plate is insufficiently continuous, systematic, and substantial to invoke the Court's general jurisdiction over US Joiner. As explained *supra*, a defendant may not be haled into a jurisdiction solely as a result of fortuitous or attenuated contacts or the unilateral activity of a third party. In addition, the Supreme Court has found that even regular "purchases and related trips, standing alone, are not sufficient basis for a State's assertion of jurisdiction." *Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868; *see also Central Freight Lines*, 322 F.3d at 381 (no general jurisdiction over defendant that sent sales people to forum state on a regular basis to develop business, negotiate contracts, and service national accounts); *Reyes*, 944 S.W.2d at 403 (no general jurisdiction over defendant that sent representatives to Texas on at least 204 occasions to inspect financial data and facilities of potential vendors and/or review equipment and material being sold to defendant).

Here, the relationship between Signal and US Joiner apparently resulted from the unilateral activity of the general contractor that hired the two subcontractors on the shipbuilding projects at issue. In addition, Plaintiff does not dispute that US Joiner initially contracted to conduct its work for the general contractor at the shipyard in Louisiana. US Joiner only later agreed to send the required parts for the curtain plate to Signal, and to oversee its installation at Signal's Texas facility, at Signal's request. The resulting existence of a single contract between the two entities that necessitated the alternating visits of five employees hardly evinces continuous and systematic contacts with Texas that are sufficiently substantial in nature. As such, the Court finds that it does not have general jurisdiction over Defendant US Joiner.

**E. Plaintiff's Request for Transfer**

█ In his responses to Defendants' motions to dismiss, Plaintiff requests that

the Court transfer his case, rather than dismiss it, should the Court determine that it lacks personal jurisdiction over these Defendants. (Docs. 23, 24). Specifically, Plaintiff requests transfer to the Southern District of Mississippi, Southern Division. *Id.* Both Defendants state in their briefing that they proposed an agreed transfer to this venue, which Plaintiff initially rejected. (Docs. 26, 28). Northrop Grumman therefore advises the Court that it is unopposed to transfer, whereas US Joiner contends that Plaintiff's refusal to agree to a transfer warrants dismissal. *Id.*

 "For the convenience of parties and witnesses, in the interest of justice," even a district court lacking personal jurisdiction over a defendant may transfer a case "to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *see Phillips v. Ill. Cent. Gulf R.R.*, 874 F.2d 984, 987 (5th Cir.1989)(citing *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962)). In determining whether transfer is warranted, the court must consider a number of private and public interest factors, none of which is given dispositive weight. *E.g., In re Volkswagen*, 506 F.3d 376, 380 (5th Cir.2007). The Fifth Circuit has indicated that a party moving to transfer bears the burden of demonstrating to the court that it should transfer the case. *See id.* at 384; *Fisher v. Nabors Drilling USA, Inc.*, 2006 WL 2882799, at *1 (S.D.Tex.2006)(citing *Peteet v. Dow Chem. Co.*, 868 F.2d 1428, 1436 (5th Cir.1989); *Time, Inc. v. Manning*, 366 F.2d 690, 698 (5th Cir.1966)).

As noted, Plaintiff's request for transfer, opposed by US Joiner, appears in its responses to Defendants' motions to dismiss, rather than in the context of a formal motion to transfer venue. As US Joiner is opposed to transfer, and Plaintiff has made no attempt to show that the private and public interest factors weigh in favor of

transfer, the Court declines to grant Plaintiff's request.

## III. Conclusion

For the foregoing reasons, the Court finds that it lacks general jurisdiction over Defendants Northrop Grumman Ship Systems, Inc. and US Joiner LLC. Therefore, the Court hereby **ORDERS** that Defendants' Motions to Dismiss for Lack of Personal Jurisdiction are hereby **GRANTED**. (Docs. 3, 4).