# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
August 12, 2010

Lyle W. Cayce
Clerk

No. 09-20625

WILLIAM ROGER CLEMENS,

Plaintiff – Appellant,

v.

BRIAN McNAMEE,

Defendant – Appellee.

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, SMITH, and HAYNES, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge.

In this appeal, we consider whether allegedly defamatory statements made elsewhere but which caused damage to the plaintiff in the forum state are sufficient to confer personal jurisdiction over the defendant when the content and context of the statements lack any connection with the forum state. For the following reasons, we agree with the district court that the plaintiff failed to establish personal jurisdiction over the defendant and affirm.

I.

The plaintiff, Roger Clemens, moved to Texas in 1977 at the age of fifteen. In 1983, after playing college baseball for the University of Texas, he was drafted by the Boston Red Sox, a Major League Baseball team. Clemens played

No. 09-20625

for the Red Sox until 1996, when he signed with the Toronto Blue Jays. As a member of the Blue Jays, Clemens met the defendant Brian McNamee, an athletic trainer for the Toronto organization. In 1999, Clemens joined the New York Yankees, and one year later, the Yankees hired McNamee as an assistant trainer. Clemens trained with McNamee until some point in 2007.[1] Over the course of their professional relationship, McNamee traveled to Texas approximately thirty-five times to train Clemens and other professional athletes. Although he temporarily resided in other cities during his professional baseball career, Clemens returned to Houston at the end of every baseball season. He currently lives in Texas with his wife and four children.

In the summer of 2007, federal authorities contacted McNamee in New York City in connection with the Government's criminal investigation of BALCO, a Bay Area laboratory allegedly involved in the development and sale of performance-enhancing drugs. At the interview, authorities told McNamee that the Government had sufficient evidence to secure a conviction against McNamee for delivering illegal performance-enhancing drugs to athletes. In lieu of prosecution, the United States Attorney's Office for the Northern District of California gave McNamee use immunity for any statements he gave in relation to the Government's investigation. McNamee was interviewed by the Government for two days during which he told investigators that he had injected Clemens with performance-enhancing drugs in 1998, 2000, and 2001. These injections, according to McNamee, took place in Toronto and New York.

A short time after his interview with the Government, federal authorities contacted McNamee again, this time requesting that he cooperate with a Major League Baseball investigation being conducted by former United States Senator

---

[1] Clemens retired from the Yankees in 2003. In 2004, he joined the Houston Astros and played with the team for three seasons. In 2007, he signed a one-year contract with the Yankees. At present, he is not a member of any professional baseball team.

George Mitchell into the use of performance-enhancing drugs in the game ("Mitchell Commission"). Federal investigators arranged and participated in McNamee's meeting with Mitchell in New York. On December 12, 2007, the Mitchell Commission released the findings of its investigation in its *Report to the Commissioner of Baseball of an Independent Investigation Into the Illegal Use of Steroids and Other Performance Enhancing Substances By Players In Major League Baseball* ("Mitchell Report"). The Mitchell Report included McNamee's statements concerning Clemens' use of performance-enhancing drugs. Every national news service, as well as every major newspaper in Texas, republished McNamee's statements. Following the Mitchell Report's release, McNamee spoke with John Heyman, a senior writer for the internet site SI.com. During this interview at McNamee's house in Queens, New York, McNamee repeated the statements that had been published in the Mitchell Report. Heyman posted an article containing these statements to the website SI.com on January 7, 2008.

In January 2008, Clemens filed suit for defamation against McNamee in Texas state court. McNamee removed the action to the United States District Court and moved to dismiss Clemens' complaint for *inter alia* lack of personal jurisdiction and failure to state a claim. The district court dismissed Clemens' defamation action for lack of personal jurisdiction because the focal point of McNamee's statements about Clemens was not Texas. The district court also found, in the alternative, that if the court had personal jurisdiction over McNamee, his statements to the Mitchell Commission were cloaked with absolute immunity. This appeal followed.

II.

A.

Whether the district court can properly exercise personal jurisdiction over the defendant is an issue of law we review *de novo. Felch v. Tranportes. Lar-Mex S.A. de C.V.*, 92 F.3d 320, 324 (5th Cir. 1996). The plaintiff bears the burden of

establishing personal jurisdiction over a non-resident defendant and that burden is met by making a *prima facie* showing. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000). We must accept the plaintiff's uncontroverted allegations as true, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (citation omitted).

B.

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution. *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999). Because Texas's long-arm statute reaches to the constitutional limits, the question we must resolve is whether exercising personal jurisdiction over the defendant offends due process. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–14 (1984).

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a foreign defendant when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing minimum contacts with the forum state and (2) the exercise of jurisdiction over that defendant does not offend traditional notions of fair play and substantial justice. *Revell*, 317 F.3d at 470 (footnotes and internal citation omitted). There are two types of minimum contacts: contacts that give rise to specific personal jurisdiction and those that give rise to general jurisdiction. *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). On appeal, Clemens only argues that McNamee's defamatory statements were sufficient to confer specific personal jurisdiction; accordingly, we only examine whether McNamee's contacts with Texas were sufficient to confer jurisdiction under the Supreme Court and

No. 09-20625

this Circuit's specific personal jurisdiction jurisprudence.  Specific jurisdiction exists when "the defendant has 'purposefully directed' his activities at residents of the forum . . . and the litigation results from alleged injuries that arise out of or relate to those activities." *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985) (citations omitted); *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 1061, 1068 n.9 (5th Cir. 1992).  The non-resident's purposefully directed activities in the forum must be such that he could reasonably anticipate being haled into court in the forum state.  *Burger King*, 471 U.S. at 474.  Specific jurisdiction also requires a sufficient nexus between the non-resident's contacts with the forum and the cause of action.  *Helicopteros Nacionales de Colombia, S.A.,* 466 U.S. at 414 n.8.

We first address whether McNamee had sufficient minimum contacts with the forum to support specific personal jurisdiction.  It is essential that there be some act by which the defendant purposefully avails himself of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws.  *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).  The "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts.  *Burger King*, 471 U.S. at 472 (citation omitted).  In this case, the relevant contacts from which Clemens' cause of action arises are the allegedly defamatory remarks about Clemens which McNamee made to the Mitchell Commission and John Heyman of SI.com.  Therefore, the issue narrows to whether these defamatory remarks constituted purposeful availment such that McNamee could have reasonably anticipated being haled into a Texas court as a result of his statements.

The most instructive case on this issue from the Supreme Court is *Calder v. Jones*, 465 U.S. 783 (1984).  In *Calder*, a Hollywood gossip tabloid published an allegedly libelous story about the actress Shirley Jones.  *Id.* at 785.  Jones

5

filed suit in California against the author of the story and the editor of the tabloid. *Id.* The Supreme Court held that California courts had jurisdiction over the defendants because they had "expressly aimed" their conduct towards California:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and the harm.

*Id.* at 788-89 (emphasis added).

To support personal jurisdiction against the defaming defendant, this court has emphasized *Calder*'s requirement that the forum "be the focal point of the story." *Id.* For example, in *Revell v. Lidov*, the plaintiff sued a non-resident defendant in Texas after the defendant alleged on a Columbia University website that the plaintiff had advance knowledge of the bombing of Pan Am Flight 103. *Revell*, 317 F.3d at 469. Although we recognized that the plaintiff suffered emotional distress and damage to his professional reputation in Texas, the *Revell* court concluded that the alleged defamatory statements were inadequately directed to Texas to satisfy minimum contacts under *Calder*. *Id.* at 473. As this court explained:

> First, the article written by [plaintiff] about [defendant] contains no reference to Texas, nor does it refer to the Texas activities of [plaintiff] and it was not directed at Texas readers as distinguished from readers in other states. Texas was not the focal point of the article or the harm suffered, unlike *Calder*, in which the article contained descriptions of the California activities of the plaintiff, drew upon California sources, and found its largest audience in California.

*Id.*

No. 09-20625

In *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005), we again required the plaintiff to show that Texas was the focus of the defamatory communication. In *Fielding*, the plaintiffs were the Swiss Ambassador to Germany and his American wife, a former Mrs. Texas who was a resident of Texas; the defendants were several German newspapers who wrote allegedly libelous articles about the plaintiffs' social lives in Berlin. *Id.* The plaintiffs sued the defendants in Texas, arguing that jurisdiction was proper because the stories harmed their reputation among friends and family in Texas. *Id.* at 424. Despite the alleged harm suffered in the forum, the *Fielding* court declined to find personal jurisdiction because "the clear focus of the . . . articles was the alleged affair between [the Ambassador] and [his alleged mistress] and its aftermath, activities which occurred in Germany and Switzerland." *Id.* at 426.

We read *Calder* as requiring the plaintiff seeking to assert specific personal jurisdiction over a defendant in a defamation case to show "(1) the subject matter of and (2) the sources relied upon for the article were in the forum state." *Id.* (citing *Revell*, 317 F.3d at 474 & n.48). Thus the question in this case further narrows to whether McNamee's allegedly defamatory statements were aimed at or directed to Texas. As in *Revell* and *Fielding*, the statements in this case concerned non-Texas activities–the delivery of performance-enhancing drugs to Clemens in New York and Canada. The statements were not made in Texas or directed to residents of Texas.

In support of jurisdiction, Clemens points to the harm he suffered in Texas and to McNamee's knowledge of the likelihood of such damage in the forum. Yet under *Calder*, *Revell*, and *Fielding*, Clemens has not made a prima facie showing that McNamee made statements in which Texas was the focal point: the statements did not concern activity in Texas; nor were they made in Texas or directed to Texas residents any more than residents of any state. As such, the

7

No. 09-20625

district court did not err in dismissing Clemens' suit for lack of personal jurisdiction over McNamee.[2]

### III.

For the foregoing reasons, the district court's judgment is affirmed.

AFFIRMED.

_____

[2] *See also Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 401 (5th Cir. 2009) ("Under *Calder*, . . . the plaintiff's residence in the forum, and suffering of harm there, will not alone support [personal] jurisdiction.") (brackets in original, citation omitted); *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 870 (5th Cir. 2001) ("If we were to accept Appellants' arguments, a nonresident defendant would be subject to jurisdiction in Texas for an intentional tort simply because the plaintiff's complaint alleged injury in Texas to Texas residents regardless of the defendant's contacts."); *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 212 (5th Cir. 1999) (citations omitted) (foreseeable injury alone is not sufficient to confer specific jurisdiction, absent the direction of specific acts toward the forum).

HAYNES, Circuit Judge, dissenting.

Because I conclude that specific jurisdiction exists here, I respectfully dissent.  McNamee had sufficient minimum contacts with Texas, and the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice.  Accordingly, the district court should not have dismissed this case on that ground.[1]

The Due Process Clause of the Fourteenth Amendment requires that, before a person can be subject to jurisdiction in a particular forum, he must have "purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and . . . the exercise of jurisdiction over that defendant [must] not offend 'traditional notions of fair play and substantial justice.'" *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 380 (5th Cir. 2003).  In turn, minimum contacts can be broken down into two categories: those sufficient to support specific jurisdiction and those sufficient to support general jurisdiction.  *Id.* at 381.  Only the former concerns us here, as I agree that McNamee's contacts were not sufficient for general jurisdiction.

In construing Supreme Court precedents in this area, we have held that specific jurisdiction may be asserted over a defendant where that defendant has "'purposefully directed [his] activities at the forum state and the litigation results from alleged injuries that arise out of or *relate to* those activities.'" *Id.* (emphasis added) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).  In analyzing whether personal jurisdiction is proper, we "must accept

---

[1]  The majority opinion does not reach the question of the district court's alternative holding on the immunity question for the Mitchell Commission statements, so I will not address that question here.

No. 09-20625

the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002) (quotation marks, brackets, and citation omitted).

## A. McNamee Established Minimum Contacts with Texas

In this case, there are two independent grounds upon which the minimum contacts inquiry is satisfied. First, McNamee made numerous business trips to Texas to train Clemens, and these trips "relate to" and form an integral part of the instant cause of action. Second, under the *Calder*[2] "effects test," McNamee established minimum contacts with Texas because, taking Clemens's allegations as true, McNamee intentionally directed his false claims at Texas, where he knew Clemens resided and where it was foreseeable that the brunt of the injury from McNamee's statements would be felt.

*1. McNamee's Business Contacts with Texas Satisfy the Minimum Contacts Test*

Unlike the cases upon which the majority opinion relies, McNamee had repeated business contacts with Clemens in Texas. As the majority opinion acknowledges, McNamee visited Texas approximately thirty-five times over the course of his paid, professional relationship with Clemens, each time to train Clemens and other professional athletes. The fact that these training sessions occurred in Texas is not fortuitous: McNamee traveled to Texas because that is where Clemens continuously resided during the off-season and because, for at least part of his career, Clemens played professional baseball in Texas.[3] Thus,

---

[2] *Calder v. Jones*, 465 U.S. 783 (1984).

[3] Notably, McNamee served as Clemens's personal trainer during the three years that Clemens played for the Houston Astros. Clemens asserts that this time period was the height of his professional career. He left the Astros only a year before the allegedly libelous statements were made.

McNamee purposely availed himself of the privileges of conducting business in Texas. *See Nuovo Pignone, SPA v. Storman Asia M/V*, 310 F.3d 374, 380 (5th Cir. 2002) (holding that minimum contacts exist where the defendant "purposely has availed itself of the privilege of conducting business in that state"); *Stroman Realty, Inc. v. Antt*, 528 F.3d 382, 386 (5th Cir. 2008) ("Purposeful availment of the privileges of conducting business in a forum is indicative that a defendant has contacts with a state.").

Further, McNamee's business trips to Texas form a part of and "relate to" the training relationship from which the alleged steroid regimen either arose (McNamee's version) or did not arise (Clemens's version). *See Trinity Indus., Inc. v. Myers & Assocs., Ltd.*, 41 F.3d 229, 231 (5th Cir. 1995). In *Trinity Industries*, two lawyers allegedly counseled a Texas client's competitor to bring adverse litigation in Pennsylvania. The Texas client brought suit in Texas court, claiming breach of fiduciary duty, civil conspiracy, and negligence. We rejected the defendants' contention that personal jurisdiction was lacking because the tortious conduct occurred in Illinois—where the defendants' law firm was located—and in Pennsylvania—where the tortious advice was given. Concluding that the lawsuit related to the defendants' contacts with Texas, we observed: "The essence of Trinity's complaint is that its own lawyers counseled its competitor in bringing adverse litigation. There would be no injury or basis for a claim but for the fact that [the defendants] represented Trinity in Texas before and during their engagement by [the competitor]." *Id*. at 231-32.

Similarly, the litigation in question here clearly "relates to" McNamee's business trips to Texas because the allegedly defamatory statements relate to McNamee's training relationship with Clemens. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984) ("When a controversy is related to or 'arises out of' a defendant's contacts with the forum, the Court has said that a 'relationship among the defendant, the forum, and the litigation' is

11

No. 09-20625

the essential foundation of *in personam* jurisdiction.") (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)). As discussed above, McNamee's background as Clemens's trainer, in both Texas and New York, is what put McNamee in a position to—in his words—give Clemens steroids and, further, made him a credible person of interest to the various investigatory bodies and a news organization such as SI.com. *See Trinity Indus.,* 41 F.3d at 231-32. Accordingly, McNamee should reasonably anticipate being haled into a Texas court for matters "relating to" his services as Clemens's personal trainer, including his statements that Clemens used steroids as part of his training regimen.

The fact that McNamee's training relationship with Clemens extended beyond Texas's borders does not deprive the district court of specific jurisdiction. Neither the Supreme Court nor this court has ever required the tortious conduct to occur exclusively in or be exclusively related to the forum state. *See Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984) ("[R]espondent is carrying on a *'part of its general business'* in New Hampshire, and that is sufficient to support jurisdiction when the cause of action arises out of the very activity being conducted, *in part*, in New Hampshire.") (emphasis added); *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 244 (5th Cir. 2008) (rejecting defendant's argument that personal jurisdiction was improper because most of the relevant contacts occurred outside the forum state); *Streber v. Hunter*, 221 F.3d 701, 718 (5th Cir. 2000) (holding that specific jurisdiction was proper where "at least some of the allegations forming the basis of this lawsuit arise out of [the defendant's] contacts with Texas"). Accordingly, I conclude that the first prong of the specific jurisdiction inquiry is satisfied because McNamee's business contacts with Texas relate to this litigation and were more than "minimum."

2. *The Calder "Effects" Test Is Not a Limitation on the Ordinary Minimum Contacts Analysis*

12

No. 09-20625

In contrast, the majority opinion treats the thirty-five business trips discussed above as irrelevant and focuses entirely on the location of the alleged steroid injections in New York. Of course, Clemens denies that any such injections occurred—in Texas, New York, or anywhere else. Given the fact that we must assume for purposes of this analysis that Clemens's version of the facts is the true one, the "New York" situs of this case is based entirely upon a lie. McNamee could just as easily have named any other state as far as Clemens's position in this case is concerned. In relying entirely on the alleged libelant to fix the situs of suit, the majority opinion greatly limits specific jurisdiction jurisprudence in general and its application to libel cases in particular.

The majority opinion's formulation of the *Calder* effects test—requiring a plaintiff to show that (1) the subject matter of the defamatory statements concerned the forum; and (2) the sources relied upon by the author were in the forum—results in a mechanical personal jurisdiction test for defamation and libel cases that is both over- and under-inclusive. Two examples demonstrate this point.

In the first example, assume the same underlying facts present in this case, except that McNamee falsely stated that he injected Clemens with performance-enhancing drugs while at a truck stop in Montana. The majority's test would compel a conclusion that McNamee had purposefully availed himself of the laws of Montana because his defamatory statements concerned Montana and the focus of McNamee's story was on events that allegedly occurred in Montana. This conclusion would perhaps follow even if Clemens denied ever visiting Montana, and McNamee had no other contacts with Montana. In such a scenario, the setting of the false statement—and thus the defendant's relationship to the forum state—is fortuitous, *see Burger King*, 471 U.S. at 475, yet sufficient to establish minimum contacts under the reasoning of the majority opinion.

13

No. 09-20625

In the second example, assume that Clemens played his entire professional career with the Houston Astros and that McNamee trained Clemens on a weekly basis in Texas.[4]   Further assume, like we are required to here, that McNamee falsely stated that he injected Clemens with performance-enhancing drugs in New York, knowing that his statements would destroy Clemens's personal and professional reputation in Texas.  Thus, the only relevant connection to New York in this hypothetical is McNamee's own false statement, and all other relevant contacts between McNamee and Clemens occur in Texas.  Under the majority opinion's reasoning, personal jurisdiction in Texas in this example is improper because McNamee's statements did not concern Texas or rely on sources within Texas.   McNamee's numerous business contacts with Texas, intent to harm Clemens in Texas, and knowledge that Clemens resided in Texas and would feel the brunt of the defamatory impact there would thus be insufficient to establish minimum contacts.  The fact that McNamee did not research his allegations by consulting sources close to Clemens in Texas also becomes, under the majority opinion's analysis, a factor thwarting personal jurisdiction.[5]   As a result of the majority opinion's test, McNamee could force Clemens to litigate his defamation action in a foreign state simply by omitting reference to Texas, staging the false story elsewhere, or declining to research his allegations in Texas.

These two contrasting examples demonstrate how the majority opinion misconstrues the *Calder* effects test as some sort of restriction in defamation or

---

[4] This hypothetical scenario also presumes that general jurisdiction over McNamee is unavailable.

[5] The "research" prong of *Calder*, *Revell*, and *Fielding* is irrelevant in this case because McNamee is not a journalist relying on external sources.  He is the very person who claims to have committed the act which is the subject of the alleged libel.  Unlike a journalist, such an alleged eyewitness would never be conducting "research" in Texas or anywhere else on whether he himself is telling the truth.

14

libel cases on the ordinary minimum contacts analysis. In truth, *Calder* was an expansion of specific jurisdiction and the minimum contacts inquiry. The *Calder* "effects test" was an outgrowth of the recognition that a defendant need not ever have been physically present in the forum state to be subject to personal jurisdiction there. *See Calder*, 465 U.S. at 789 ("An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California.").

To understand this point, we must detour briefly back to the seminal case of *International Shoe v. Washington*, 326 U.S. 310 (1945), which first articulated the minimum contacts test as a way to establish jurisdiction over a defendant not physically present in the state. The *International Shoe* Court recognized that a court's ability to exercise personal jurisdiction over a defendant historically required the defendant to be physically present in the forum. *Id.* at 316. Analyzing the physical presence concept, the *International Shoe* Court determined that a nonresident who had a random contact with the forum state should not be haled into court there on a matter unrelated to that contact, yet the absence of physical presence should not defeat jurisdiction for actions directed at the forum state. *Id.* at 316-18. Thus, while physical presence is not irrelevant to the jurisdictional analysis, it is not determinative of it either.

Understood against this backdrop, the *Calder* effects test is simply an additional, but not exclusive, vehicle for establishing personal jurisdiction over a nonresident defendant who may never have been to the forum state. *See Allred v. Moore & Peterson*, 117 F.3d 278, 287 (5th Cir. 1997) ("[T]he key to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum. Whether these effects, either alone or in combination with other contacts, are sufficient to support in personam jurisdiction will turn upon the particular facts of each case.") (quoting *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985)). Put

No. 09-20625

another way, *Calder* allows a court to find that a nonresident defendant who intentionally aims his or her tortious conduct at the forum state has established minimum contacts with the forum, even if the defendant has not established a physical presence there. *See Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 402 (5th Cir. 2009).

In this case, unlike *Calder*, *Revell*, and *Fielding*[6], we are not in need of proxies for physical presence. McNamee indeed visited Texas many times. These were not mere pleasure trips or trips where McNamee was merely "passing through" Texas on the way to somewhere else. Rather, McNamee's numerous visits to Texas were business contacts with Clemens in the course of the very training relationship that did—or did not—give rise to the steroid use. *See Trinity Indus.*, 41 F.3d at 231 (holding that the defendants' business contacts with Texas "indicate that the defendants deliberately availed themselves of the benefits of an ongoing relationship with a Texas client and reasonably should have anticipated the possibility of being haled into court in Texas for claims arising out of or related to that relationship"); *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (holding that personal jurisdiction over a California doctor was proper in Texas for claims related to the administration of an experimental medical program in California because, in the aggregate, the doctor maintained numerous business contacts with patients, including the plaintiff, in Texas). In sum, McNamee's business relationship with Clemens in Texas establishes sufficient minimum contacts with Texas to support specific jurisdiction for this lawsuit, even without considering the *Calder* effects test.

*3. McNamee Has Minimum Contacts with Texas Under the* Calder *Effects Test*

[6] *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419 (5th Cir. 2005).

16

However, even if Clemens must meet the *Calder* requirements, he has done so. It is undisputed that Clemens is a resident of Texas with many civic and business activities in that state. In addition to his residency in Texas, Clemens played baseball for the Houston Astros for three years shortly before the events in question. Taking Clemens's allegations in the complaint as true, McNamee intended to cause particular harm to Clemens in Texas because he was aware that Clemens resided in Texas and that the brunt of the impact of his statements would be felt by Clemens in Texas. This conduct constitutes the kind of "deliberate targeting" that the *Calder* Court found dispositive in analyzing personal jurisdiction.

In *Calder*, the National Enquirer published an article alleging that Shirley Jones, a nationally-known actress, drank alcohol so heavily as to interfere with her professional obligations as an actress. 465 U.S. at 789 n.9. Jones sued both the author and the editor of the article in California state court. The Court found that, despite the limited or total absence of physical connections between the defendants and the forum state, personal jurisdiction over the defendants was "proper in California based on the 'effects' of their Florida conduct in California." *Id.* at 789. The Court emphasized that the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California" because the defendants knew the devastating impact the article would have upon Jones, and that the brunt of the injury would be felt by Jones in California, where she lived and worked. *Id.* at 789-90.

Thus, under *Calder*, personal jurisdiction is appropriate over McNamee because McNamee knew that Clemens resided and worked in Texas and that Clemens would feel the brunt of the impact of his allegedly defamatory statements in Texas. *See Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 (5th Cir. 1988) ("In *Calder*, the Supreme Court held that when an alleged tort-feasor's intentional actions are expressly aimed at the forum state, and the

tort-feasor knows that the brunt of the injury will be felt by a particular resident in the forum, the tort-feasor must reasonably anticipate being haled into court there to answer for its tortious actions."); *Guidry v. U.S. Tobacco Co.*, 188 F.3d 619, 628 (5th Cir. 1999) ("Even an act done outside the state that has consequences or effects within the state will suffice as a basis for jurisdiction in a suit arising from those consequences if the effects are seriously harmful and were intended or highly likely to follow from the nonresident defendant's conduct."); *Brown v. Flowers Indus., Inc.*, 688 F.2d 328, 333 (5th Cir. 1982) (holding that specific personal jurisdiction existed in defamation action even though the non-resident defendant was not present in the forum state, but concluding that, "[i]f, as is alleged in this case, [the defendant] causes injury in [the forum state], he is covered by the [long-arm] statute").

For his part, McNamee does not dispute that Clemens suffered particular injury in Texas as a result of McNamee's allegations. Instead, McNamee contends, and the majority opinion apparently agrees, that because he said the steroid injections occurred only in New York, this case has no connection to Texas, citing *Revell* and *Fielding*.

However, unlike *Revell*, where the defendant was unaware of the plaintiff's residence, here McNamee was acutely aware of Clemens's relationship to Texas from his visits there and from his overall training relationship with Clemens. Further, the defendant in *Revell* had no relevant contacts with Texas and no other facts demonstrated that the defendant had intentionally directed his allegedly tortious conduct toward the plaintiff in Texas. In this case, McNamee's training relationship with Clemens in Texas and his knowledge that Clemens resided and had recently played professional baseball in his home state of Texas demonstrate that McNamee purposefully directed his allegedly defamatory statements at Clemens's personal and professional reputation in Texas. *See Revell*, 317 F.3d at 475-76 (observing that knowledge of the forum at

18

which the defendant's conduct is directed will often provide sufficient evidence that the forum is the focal point of the tortious activity).

Similarly, *Fielding* is inapposite. In *Fielding*, the plaintiffs were living overseas in the Swiss embassy in Germany. The court observed that it was unclear if and when the appellants ever lived in Texas because "during virtually the entire time relevant to this lawsuit, [the appellants] appear to have been residents of Germany." 415 F.3d at 423-24 n.2. The allegedly libelous articles focused on the appellants' social lives in Germany, and the brunt of the injuries suffered by the appellants occurred overseas. In contrast, Clemens's life is anchored in Texas, and McNamee was well aware of this fact at the time he made the allegedly defamatory statements about Clemens. Further, unlike the German newspaper at issue in *Fielding*, which was unlikely to be read in Texas, SI.com is widely available and likely to be read by Clemens's fan base in Texas. In short, the SI.com publication is much more similar to the publication at issue in *Calder*, where the Court found personal jurisdiction over the nonresident defendant.

By focusing exclusively on the setting of McNamee's allegedly defamatory statements, the majority opinion unduly narrows the minimum contacts and specific jurisdiction inquiry to a mechanical or technical formulation, rather than the "highly realistic" approach urged by the Supreme Court. *Burger King*, 471 U.S. at 478-79 ("The Court long ago rejected the notion that personal jurisdiction might turn on 'mechanical' tests or on 'conceptualistic . . . theories' . . . . Instead, we have emphasized the need for a 'highly realistic' approach . . ."); *Int'l Shoe Co.*, 326 U.S. at 319 ("It is evident that the criteria by which we mark the boundary line . . . cannot be simply mechanical or quantitative. . . . Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the laws . . ."). Indeed, were this case to proceed to trial, McNamee and Clemens would no

19

doubt testify extensively regarding their training relationship, including the relationship in Texas, both in the off-seasons and while Clemens played with the Houston Astros. The scope of the trial certainly would not be limited to the events that did or did not transpire in New York on the particular dates alleged by McNamee. Employing the "highly realistic" approach advocated by the Supreme Court, Clemens has alleged sufficient facts to show that McNamee intentionally directed his allegedly defamatory remarks at Clemens's personal and professional reputation in Texas.

Thus, I would conclude that McNamee had sufficient minimum contacts with Texas under the *Calder* effects test because McNamee was aware that Clemens resided and worked in Texas and that the brunt of the impact of his defamatory statements would be felt by Clemens in Texas.

*4. McNamee Had Minimum Contacts with Texas Sufficient to Support Specific Jurisdiction Here*

Either considering only the business contacts by McNamee in Texas or considering the "effects test" of *Calder* under the facts alleged here, McNamee had sufficient minimum contacts with Texas. When both are combined, this conclusion becomes even more clear. *See Walk Haydel*, 517 F.3d at 243 ("W&S's purposeful contacts with Louisiana, in combination with the foreseeable harmful effects in Louisiana of its allegedly illegal activity, makes specific jurisdiction proper."); *see also Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 214 (5th Cir. 1999) ("In addition to the communications Brandt directed into Texas from outside of Texas, Brandt also visited Texas during 1989 at which time he allegedly gained from Tjontveit the confidential information he would later use against Wien Air."). Accordingly, I would conclude that McNamee had sufficient minimum contacts with Texas to make it reasonably foreseeable that he would be haled into a Texas court for this lawsuit.

## B. Exercising Personal Jurisdiction Over McNamee in Texas Does Not Offend Traditional Notions of Fair Play and Substantial Justice

Finally, I would conclude that McNamee has failed to show that the exercise of personal jurisdiction over him in this action would be unfair or unreasonable. In assessing the reasonableness of a court's exercise of personal jurisdiction, we examine five factors: (1) the burden upon the nonresident defendant to litigate in that forum; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the several states' shared interest in furthering substantive social policies. *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

In this case, the burden upon McNamee to litigate the case in Texas would not be unfair. McNamee has repeatedly traveled to Texas, deliberately targeted his conduct toward Texas, and profited from his work in Texas. Further, we have repeatedly recognized that the forum state has a compelling interest in protecting its residents from tortious injuries by nonresidents. *See Walk Haydel*, 517 F.3d at 245. Similarly, Clemens has an equal, if not greater, interest in securing relief in his home state, where the brunt of the injury to his personal and professional reputation was sustained. Both Texas and New York would be efficient forums for resolution of this case. Texas's substantive policy of protecting its citizens from reputational injuries is greater than New York's interest in an event that, assuming for purposes of this analysis, did not occur.

Because I conclude that McNamee had established minimum contacts with Texas and that the exercise of personal jurisdiction would not violate traditional notions of fair play and substantial justice, I conclude that the district court should have exercised specific personal jurisdiction over McNamee. I respectfully dissent from the majority opinion's contrary decision.